819 F.2d 806
 Fed. Sec. L. Rep. P 93,348, RICO Bus.Disp.Guide 6634,
22 Fed. R. Evid. Serv. 1691
 MARSHALL & ILSLEY TRUST CO., as personal representative of
the Estate of Charles W. Landis, Plaintiff-Appellant,
v.
Joseph L. PATE, et al., Defendants-Appellees.
Charles W. LANDIS, Plaintiff-Appellee,
v.
Jack LEONE, et al., Defendants-Appellants.
Charles W. LANDIS, Plaintiff-Appellee,
v.
Raymond E. FRENCH, Defendant-Appellant.
 Nos. 86-1468, 86-1537 and 86-1557.
 United States Court of Appeals,
Seventh Circuit.
 Argued Oct. 27, 1986.
Decided May 20, 1987.
 
 Alan Palwick, Chicago, Ill., Merle L. Royce, Chicago, Ill., for defendant-appellant.
 Thomas R. Schrimpt, Kluwin, Dunphy & Hankin, Milwaukee, Wis., for plaintiff-appellee.
 Before CUMMINGS, and CUDAHY, Circuit Judges, and WILL, Senior District Judge.*
 CUDAHY, Circuit Judge.
 
 
 1
 On September 22, 1982, Dr. Charles W. Landis, now deceased and represented by the plaintiff Marshall & Ilsley Trust Co., purchased three limited-partnership shares from the defendant Joseph Pate for a total consideration of $30,000. Landis lost the entire investment, and he eventually sued the defendants alleging violations of the Securities Exchange Act of 1934 ("1934 Act") and the Racketeer Influenced and Corrupt Organizations Act ("RICO") and also alleging common law fraud. The district court dismissed the RICO counts for failure to state a claim upon which relief could be granted, granted summary judgment to the defendants based on their statute of limitations defense to the 1934 Act count and dismissed the pendent state fraud claim for lack of jurisdiction. We vacate and remand.
 
 I.
 
 2
 The plaintiff appeals from an adverse grant of summary judgment, so we credit its version of disputed facts.
 
 
 3
 Defendant Pate was an accountant for Landis and his medical practice. In September, 1982, Pate encouraged Landis to invest in a limited partnership known as Energy Conservation Partners ("EC Partners"), which was formed to fund the development and marketing of "energy management systems" manufactured by K.E.M. Systems, Inc. ("KEM Systems"). Landis was led to believe that K.E.M. Industries, Inc. ("KEM Industries") was planning to buy KEM Systems' product and go public with it. Pate assured Landis that he would receive $60,000 for his $30,000 investment.[1]
 
 
 4
 Landis received little paperwork documenting his investment, and his concern gradually mounted when the predicted $60,000 return did not materialize. In January 1984, Landis asked Pate about the delay; Pate expressed surprise that Landis had received nothing. In February 1984, Landis contacted defendant Jack Leone about the delay. Leone told Landis that EC Partners had fallen apart and that the investment was lost. Landis filed his four-count complaint on July 27, 1984.
 
 
 5
 Count 1 of Landis' original complaint alleged that Pate and the other defendants (except Trans Global) violated sections 10(b) and 20 of the 1934 Act, 15 U.S.C. Secs. 78j(b), 78t(a), by deceiving Landis in connection with the sale of the limited partnership interest. The complaint alleged that Pate personally misled Landis and that the other defendants were all "controlling persons" liable for the actions of EC Partners and its agent Pate.
 
 
 6
 Counts 2 and 3 of Landis' original complaint alleged that the activities of the defendants described in Count 1 and similar acts defrauding other investors constituted racketeering activities violating section 1962 of RICO, 18 U.S.C. Sec. 1962. Count 4 alleged that all the defendants (except Trans Global) misrepresented facts to Landis, violating common law fraud duties.
 
 
 7
 No answer to the complaint was received from defendants Pate, Nicholas Leone, EC Partners, KEM Systems or Trans Global. Answers were filed by defendants Jack Leone, French, Deerfield, KEM Industries, and Ilice. A flurry of procedural parrying eventually resulted in a victory for all defendants--both those present and those absent. The district court reached the following dispositions. On Count 1 (securities fraud), summary judgment was granted in favor of the defendants based on the relevant Wisconsin statute of limitations. On Counts 2 and 3 (RICO), the defendants' motions to dismiss were granted with prejudice because the plaintiff did not allege two predicate acts that injured Landis. Count 4 (fraud) was dismissed for lack of pendent jurisdiction. The court on its own motion denied or dissolved default judgments against nonappearing defendants.
 
 
 8
 On Count 1, we vacate the summary judgment, and we remand the case with instructions to reinstate the state fraud claim and to permit the plaintiff to attempt to amend its RICO claims.
 
 II.
 A. 1934 Act Claim
 
 9
 The district court concluded that Landis "should have known that he might have been defrauded by January of 1983," Order, Feb. 24, 1986, and that, hence, his lawsuit was barred by the applicable one-year statute of limitations. See Wis.Stat. Sec. 551.59(5) (1979) (amended 1983); Gieringer v. Silverman, 731 F.2d 1272 (7th Cir.1984). Two factors seem to have pointed toward this conclusion. First, the district court apparently relied on the fact that at one point in his testimony Landis remarked that he had received neither proper documentation of his investment nor his $60,000 check by January 1983, despite assurances that the check would be mailed by December 31, 1982. Second, the court stated that Landis did not adequately counter the defendants' arguments that Landis knew or should have known of the fraud by January 1983. (Landis apparently relied on an earlier ruling by the district court that a three-year statute of limitations applied under Wisconsin law, which would not bar Landis' claim under any construction of the facts.) See Order, Jan. 11, 1986.
 
 
 10
 Neither reason justifies summary judgment for the defendants. First, the record reveals an unmistakable material issue of fact: some testimony suggests that the $60,000 check was to be mailed in December 1982; other testimony (and Landis in his brief) suggests it was to be December 1983. Cf. Appellant's Brief at 10-11. If it was the latter, Landis has a strong case that he reasonably delayed investigating the situation until January 1984, only six months before he filed this lawsuit.
 
 
 11
 Second, Landis had reason to ignore the defendants' summary judgment motion and its assertion of when Landis should have learned of the fraud. He understandably relied on an earlier order by the district court in the case stating that a three-year statute of limitations applied. (On appeal, the parties agree that a one-year statute of limitations applies.) Landis' earlier reliance on the three-year limit does not bar him from arguing now that a material issue of fact exists under a one-year statute--the defendants do not argue to the contrary and we fail to see any such bar. We cannot agree with the district court's conclusion that no material issue of fact exists as to the statute of limitations, and we vacate the grant of summary judgment with respect to Count 1.
 
 
 12
 The defendants suggest that an alternative ground supports the summary judgment on Count 1, namely that none of the defendants is a "controlling person" subject to liability under section 20 of the 1934 Act, 15 U.S.C. Sec. 78t(a). The district court declined to reach this issue when granting summary judgment on Count 1, but had considered this argument earlier in the case, when it rejected the contention. Order, Jan. 11, 1985. On appeal, the defendants have failed to show that no reasonable view of the record would support section 20 liability. Hence, we cannot affirm the summary judgment on these grounds.
 
 B. RICO Claims
 
 13
 In Counts 2 and 3 of Landis' original complaint, he alleged that the defendants violated section 1964(c) of RICO, 18 U.S.C. Sec. 1964(c), through securities fraud against him. The district court dismissed these counts with prejudice for failure to state a claim upon which relief could be granted, because Landis did not allege two acts of racketeering committed by the defendants. Order at 13, Jan. 11, 1985. Landis twice moved to amend his complaint in order to revive his RICO claims, but the court denied both motions. In denying Landis' first motion to amend, the court found that Landis alleged two predicate acts of securities fraud, but that one of these was a sale of securities to someone other than Landis. The court stated: "The RICO violations must be alleged in relation to the plaintiff and they must have been carried out by the defendants against whom the claim is made." Order at 2-3, March 28, 1985. In denying Landis' second motion to amend, the court amplified the reason for which it rejected Landis' allegations:
 
 
 14
 Landis alleges that one of the predicate acts was the fraudulent sale of the limited partnership to him and that the other act was the fraudulent sale of securities to several investors who are not parties to this lawsuit. The two predicate acts necessary to state a RICO violation must have harmed the plaintiff. The court cannot consider collateral acts supposedly committed against persons not a party to the lawsuit. To do so would necessitate holding a trial within a trial involving nonparties.
 
 
 15
 Order at 3, June 17, 1985.
 
 
 16
 Apparently, the district court construed the phrase "injured ... by reason of a violation of [RICO] section 1962," 18 U.S.C. Sec. 1964(c), to require that the plaintiff suffer injury from each of the (at least two) acts necessary to state a RICO violation.[2] Imposing such a requirement, however, would conflate what must be two separate inquiries: first, was there a pattern of racketeering activity violating RICO, and second, was the plaintiff injured by the RICO violation? We do not believe that a plaintiff, in order to state a claim under section 1964(c), must allege an injury to its business or property either caused by at least two predicate acts, or caused by all the acts adding up to a pattern. Rather, we believe a plaintiff must prove only: (1) a violation of section 1962 (for example, a person furthering an enterprise through a pattern of racketeering activity), and (2) an injury directly resulting from some or all of the activities comprising the violation. At what targets the acts of racketeering activity are aimed goes to the question whether a "pattern" has been demonstrated.
 
 
 17
 In Sedima, S.P.R.L. v. Imrex Co., 473 U.S. 479, 496 n.14, 105 S.Ct. 3275, 87 L.Ed.2d 346 (1985), the Supreme Court rejected the argument that the "by reason of a violation" language of section 1964(c) required that a plaintiff prove either that the defendant had been criminally convicted of a violation or that the plaintiff suffered a special "racketeering injury." Id. at 3284, 3286. The Court concluded that, when a plaintiff has shown a violation of section 1962, "the compensable injury necessarily is the harm caused by predicate acts sufficiently related to constitute a pattern." Id. at 3286. The question here is whether a plaintiff, after proving predicate acts sufficient to constitute a pattern (which in some cases must involve more than two acts, see id. at 3285 n. 14), must prove that every act involved in the pattern also caused a direct injury to the plaintiff.[3]
 
 
 18
 This circuit has established that the existence of a "pattern" as required by RICO is a fact-specific question encompassing many relevant factors. Morgan v. Bank of Waukegan, 804 F.2d 970, 975-76 (7th Cir.1986). The racketeering activities involved must reveal some "continuity"--i.e., activities continuing over time or in different places--as well as some "relationship" among activities--i.e., activities adding up to coordinated action. See id. at 975; see also Lipin Enters. v. Lee, 803 F.2d 322, 324 (7th Cir.1986). One factor tending to show the existence of a pattern of activity is the presence of multiple victims. Morgan, 804 F.2d at 975. Thus, a plaintiff attempting to prove that a defendant or defendants violated RICO through a pattern of racketeering activity may attempt to prove activities directed at a variety of victims. In light of this, we cannot approve the district court's holding that a plaintiff must show that "[t]he two predicate acts necessary to state a RICO violation must have harmed the plaintiff." Order at 3, June 17, 1985. Proof of a "pattern" is a first step, which often may require proof of more than two predicate acts. Once a pattern is proven, however, a plaintiff must show only an injury "resulting" from the violation. It would be illogical to require a plaintiff to show that all the acts adding up to a "pattern" injured him, especially in view of the fact that many such acts may be somewhat distinct and separate in time.
 
 
 19
 Our research has disclosed no case holding that a civil RICO plaintiff is precluded from recovering damages because, while there was sufficient proof of an enterprise and a pattern of racketeering activity, the plaintiff failed to show injury directly resulting from all the predicate acts constituting the pattern. But cf. Yancoski v. E.F. Hutton & Co., 581 F.Supp. 88, 96 (E.D.Pa., 1983) (limiting the injury requirement of Sec. 1964(c) to "simply requiring that the plaintiff was injured by at least two acts of racketeering activity--a pattern--charged to the defendant"). If a plaintiff adequately proves a violation of section 1962 by showing, for example, a pattern of racketeering activity in furtherance of an enterprise, then the plaintiff should recover for whatever damages are directly caused by any part of the acts that add up to a violation. See Papagiannis v. Pontikis, 108 F.R.D. 177, 179 (N.D.Ill.1985) ("[P]erpetration of fraudulent activities on more than one victim, while following the same modus operandi, is indeed a 'pattern' for RICO purposes.... What that means is that each victim can sue the RICO violator, adducing evidence of the offense against the other victim to meet the proof requirement of the statute as to a 'pattern.' ") (emphasis omitted); see also SJ Advanced Technology & Mfg. Corp. v. Junkunc, 627 F.Supp. 572, 577 (N.D.Ill.1986) ("separate acts of fraud on various separate parties" can constitute a "pattern" under RICO).[4] Under the district court's apparent interpretation, if a plaintiff could prove the existence of an ongoing criminal scheme primarily involving, for example, the hijacking of liquor shipments, but the only injury to the plaintiff was the burning down of his liquor store in the furtherance of the scheme, this single racketeering act would not permit plaintiff to recover RICO damages. This result is, we think, incorrect.
 
 
 20
 On remand, therefore, the plaintiff need not prove that it suffered injury from each (or more than one) predicate act constituting the pattern. Given leave to amend its complaint, the plaintiff must of course allege adequate facts to show the existence of an enterprise and a pattern of racketeering activities and other RICO requisites.
 
 C. Pendent Claim
 
 21
 The district court dismissed without prejudice the pendent state law claim after dismissing or granting summary judgment on the federal claims. Pendent jurisdiction is a matter of discretion, and it is established that when federal claims are dismissed before trial, pendent state claims should generally be dismissed as well. United Mine Workers of America v. Gibbs, 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966). Because we are remanding this case and vacating the dismissal of federal claims, we must also vacate the district court's dismissal of the pendent claim. We therefore moot appellee's cross-appeal which argues that the district court abused its discretion in not deciding the merits of the pendent claim.
 
 D. Attorney-Client Privilege
 
 22
 The plaintiff also argues that we must reverse the district court discovery order that required defendant French to testify and produce all documents except those protected by the attorney-client privilege. The plaintiff suggests that we should "order that French not be entitled to assert the attorney-client privilege in connection with any testimony by him in [this case]," because French's client has been shown, prima facie, to have committed fraud. We cannot agree that the commission of fraud justifies the blanket sort of order the plaintiff requests. It is true, however, that the attorney-client privilege protects only confidential communications between attorney and client, and the privilege should be construed narrowly, see United States v. Weger, 709 F.2d 1151, 1154 (7th Cir.1983). In addition, the plaintiff has made no specific showing of how defendant French has abused the privilege. We cannot abrogate the privilege entirely, and particular examples of its abuse are not before us. On remand, the plaintiff can certainly argue that fraud has vitiated the privilege in particular instances, cf. id., but nothing before us now suggests that the privilege has been abused.
 
 E. Costs and Attorney's Fees
 
 23
 Defendant French cross-appeals from the district court's denial of a motion for costs and attorney's fees under Rule 11, Fed.R.Civ.P. 11. We must affirm the order of the district court unless it abused its discretion. E.g., Frazier v. Cast, 771 F.2d 259, 263 (7th Cir.1985). Since the plaintiff has stated valid securities law and RICO claims, we decline to find that the district court has abused its discretion in denying Rule 11 sanctions.
 
 F. Default Judgments
 
 24
 Five defendants did not answer the complaint after service of process: Pate, Nicholas Leone, EC Partners, KEM Systems and Trans Global. Pursuant to Federal Rule of Civil Procedure 55, the district court entered default judgments against Nicholas Leone and KEM Systems on February 28, 1985 in the amount of $30,000, jointly and severally. On June 17, 1985, the district court deferred until trial a motion for default judgments against Pate and EC Partners.
 
 
 25
 On February 24, 1986, when the court ordered summary judgment against the plaintiff pursuant to the answering defendants' motions, the court on its own motion also granted summary judgment on all claims in favor of the five non-answering defendants (and dissolved the default judgments). The court, however, provided little explanation for granting summary judgment in favor of nonanswering defendants. Since we are remanding for further proceedings, we suggest certain factors the court should consider before deciding to vacate the default judgments.
 
 
 26
 In general, a non-answering defendant is subject to a default judgment, with the opportunity to challenge the judgment subsequently. See Fed.R.Civ.P. 60. A district court may enter a default judgment together with the final judgment in a case. Courts have recognized, however, that in certain circumstances a default judgment is inappropriate if it results in inconsistency among judgments. This distinction was apparently first announced by the Supreme Court in Frow v. De la Vega, 82 U.S. (15 Wall.) 552, 21 L.Ed. 60 (1872). In Frow, the plaintiff De la Vega had filed a complaint charging eight defendants with a "joint conspiracy" to defraud him of a piece of real property. One of these eight, Frow, failed to file a timely answer, and the district court entered a pretrial default judgment against him. The court eventually decided the merits of the case against De la Vega and dismissed the bill. Frow appealed the default judgment and the Supreme Court reversed. Justice Bradley wrote:
 
 
 27
 If the court in such a case as this can lawfully make a final decree against one defendant separately, on the merits, while the cause was proceeding undetermined against the other, then this absurdity might follow: there might be one decree of the court sustaining the charge of joint fraud committed by the defendants; and another decree disaffirming the said charge, and declaring it to be entirely unfounded, and dismissing the complainant's bill. And such an incongruity, it seems, did actually occur in this case. Such a state of things is unseemly and absurd, as well as unauthorized by law.
 
 
 28
 Id. at 554. A defaulting defendant merely loses his standing in court and his right to notice. "If the suit should be decided against the complainant on the merits, the bill will be dismissed as to all the defendants alike--the defaulters as well as the others. If it be decided in the complainant's favor, he will then be entitled to a final decree against all." Id.
 
 
 29
 This circuit has read narrowly the restriction on inconsistent judgments established in Frow. In In re Uranium Antitrust Litigation, 617 F.2d 1248 (7th Cir.1980), we approved the pre-trial entry of default judgments against nine foreign defendants who failed to answer the complaint, despite potential exoneration of other defendants by a trial on the merits. We noted that Frow involved a charge of "joint" liability as opposed to "several" or "joint and several" liability: "The result in Frow was clearly mandated by the court's desire to avoid logically inconsistent adjudications as to liability. However, when different results as to different parties are not logically inconsistent or contradictory, the rationale for the Frow rule is lacking. Such is this case involving joint and several liability." Id. at 1257-58; see Farzetta v. Turner Newall, Ltd., 797 F.2d 151 (3d Cir.1986) (upholding default judgments against non-answering defendants despite an assumption-of-risk defense on which answering defendants prevailed).
 
 
 30
 In the case before us, a default judgment against non-answering defendants would not necessarily be logically inconsistent with judgments in favor of other answering defendants. Thus, we do not have a situation such as in Frow, where a narrow "joint fraud" was alleged with respect to a single res in controversy. In addition, none of the non-answering defendants appeared in the present case to challenge a default judgment. Further, the answering defendants prevailed on an affirmative defense of statute of limitations; it is not clear that such an affirmative defense ought automatically to be applied for the benefit of non-answering defendants.
 
 
 31
 We note these distinctions between this case and Frow only to indicate that, in circumstances such as are present here, the district court should consider the various factors suggested in In re Uranium, and explain its reasons for vacating or denying default judgments against non-answering parties. The district court merely cited Continental Assurance Co. v. American Bankshares Corp., 601 F.Supp. 277 (E.D.Wis.1985), which is quite distinguishable as it involved an answering defendant who simply failed to file his own motion for summary judgment to accompany motions by co-defendants. No default was ever entered against the defendant, and the court was merely cleaning up the issues in the case when it said, "it makes no sense to uphold counts 1, 2 and 4 against [defendant] Mr. Trecker alone, and thereby further complicate this case." Id. at 283.
 
 
 32
 We therefore vacate the district court's order granting summary judgment in favor of the non-answering defendants. On remand the court should explain in greater detail any decision it might make denying default judgments against non-answering defendants.
 
 III.
 
 33
 We therefore vacate the district court's order granting summary judgments in favor of the defendants on the 1934 Act claim, vacate the order dismissing the plaintiff's RICO claims, vacate the dismissal of the pendent state claims and remand for further proceedings consistent with this opinion.
 
 
 34
 VACATED AND REMANDED.
 
 
 
 *
 The Honorable Hubert L. Will, Senior District Judge of the Northern District of Illinois, is sitting by designation
 
 
 [1]
 The complaint names several other defendants, all alleged to be connected with the basic scheme: Deerfield Financial Corp. ("Deerfield"), the sole general partner of EC Partners; Ilice Construction Co. ("Ilice"), a construction company, owned by Jack Leone, that contracted with KEM Industries; Jack Leone, an investor in EC Partners and co-owner with Pate of Deerfield; Nicholas Leone, part of a group "controlling" Deerfield, KEM Industries and REM Systems; Raymond E. French, an attorney who assisted Pate and Jack Leone in business; and Trans Global Galactica Corp. of Illinois and Nevada ("Trans Global"), companies allegedly purchased with proceeds of racketeering activities. The complaint originally named Karl M. Epme, but he was never served with process and therefore was dismissed as a party
 
 
 [2]
 The court suggested that the two acts necessary to state a RICO violation must both injure the plaintiff. Of course, circumstances often may require proof of more than two acts to show a RICO violation--a "pattern" is a minimum of two acts. See Sedima, S.P.R.L. v. Imrex Co., 473 U.S. 479, 105 S.Ct. 3275, 3285 n. 14, 87 L.Ed.2d 346 (1985). Whether the district court meant to suggest that, in every case, at least two acts must injure the plaintiff, or that the acts adding up to a "pattern," whatever their number, all must injure the plaintiff, we disagree
 
 
 [3]
 The Sedima Court cautioned that a "defendant who violates section 1962 is not liable for treble damages to everyone he might have injured by other conduct." Id. at 3286 (quoting Haroco, Inc. v. American Nat'l Bank & Trust Co., 747 F.2d 384, 398 (7th Cir.1984), aff'd, 473 U.S. 606, 105 S.Ct. 3291, 87 L.Ed.2d 437 (1985))
 
 
 [4]
 The onus is on the courts to develop a sensible description of what can constitute a "pattern" as defined in RICO. See Sedima, 105 S.Ct. at 3285 n. 14. By stiffening the requirements for showing a pattern, courts can narrow the application of RICO in accordance with a presumed Congressional intent. Given such a definition of "pattern," however, it is wrong to require a plaintiff to show injury resulting from every act comprising the pattern