**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Kathleen C. WEGER,
Defendant-Appellant.**

No. 82–2433.

United States Court of Appeals,
Seventh Circuit.

Argued Jan. 19, 1983.

Decided June 1, 1983.

Rehearing and Rehearing In Banc
Denied July 8, 1983.

1152

Dennis P. Coffey, Milwaukee, Wis., for defendant-appellant.

Joel R. Levin, Asst. U.S. Atty., Milwaukee, Wis., for plaintiff-appellee.

Before CUMMINGS, Chief Judge, COFFEY, Circuit Judge, and ASPEN, District Judge.*

COFFEY, Circuit Judge.

The defendant, Kathleen Weger, appeals her judgment of conviction of making false statements to secure a loan from a bank insured by the Federal Deposit Insurance Corporation in violation of 18 U.S.C. § 1014. The defendant contends that the district court erred in (1) admitting into evidence a letter from the defendant to her former attorney for the limited purpose of comparing the characteristics of the style of type on the letter with another letter typed on the defendant's typewriter; and (2) in admitting testimony relating to the defendant's failure to repay her loans. Affirmed.

A Grand Jury indicted the defendant on seven counts of making false statements to obtain a loan from the Community National Bank in Mukwanago, Wisconsin, insured by the Federal Deposit Insurance Corporation. The defendant was charged with submitting a forged deed and a forged title opinion to the bank to secure a loan and presenting the bank with five fraudulent invoices. The jury returned a verdict of guilty as to six of the seven counts of fraud. Thereafter, the trial judge entered a judgment of conviction and sentenced the defendant to a term of four months imprisonment and three years probation. The defendant appeals.

## ATTORNEY–CLIENT PRIVILEGE

In the summer of 1980 the defendant sought to obtain a mortgage on her property in Mukwanago, Wisconsin, from the Community National Bank, allegedly to pay for repairs to buildings on the property. In support of her loan application she presented the bank with a title opinion, ostensibly prepared and signed by Attorney Timothy Yanacheck, of the Petrie, Stocking, Meixner & Zeising law firm, stating that "record title in fee is good in Kathleen C. Weger, free and clear of encumbrances," along with a fraudulent deed reportedly conveying the property to her. The bank approved the defendant's loan primarily based upon the representations contained in the title opinion submitted by the defendant. When the defendant failed to make scheduled payments on her loan, the bank commenced an investigation that revealed the alleged title opinion had been forged and was in fact false. Thereafter the defendant was indicted by the Grand Jury for submitting false statements to the bank to induce the bank to make the loan.

At trial, the government presented evidence to establish the fraudulent nature of both the title opinion and the deed as well as several invoices Weger presented to the bank to induce the bank to grant the loan. Attorney Yanacheck testified that he had not prepared the title opinion purporting to bear his signature, much less authorized or signed it, even though he had in the past performed legal services for the defendant [1] and her family. The prosecution also introduced in evidence a typed letter of some years past from the defendant to an attorney with the Petrie, Stocking law firm for the limited purpose of comparing the characteristics of the type style on that letter with the type style on the alleged title opinion. A government expert in the field of document examination testified that it was his belief that the type styles of the title opinion, the invoice and the defendant's 1978 letter to the Petrie, Stocking law firm had uniquely similar characteristics and had most likely been typed on the defendant's typewriter.

The defense objected to the government's reliance on the letter from the defendant to her law firm on the grounds that the introduction of this letter violated the defendant's attorney-client privilege. The district court overruled the defendant's objection on two grounds: first, the court found that the defendant had waived the attorney-

---

* The Honorable Marvin E. Aspen, District Judge of the Northern District of Illinois, is sitting by designation.

1. The Petrie, Stocking law firm did not represent the defendant at any stage of the criminal proceedings in the instant case.

client privilege because she had "committed a fraud insofar as her relationship with the attorneys who represented her is concerned" in taking the law firm's stationery with the intent to commit the fraud of deceiving the bank with the fraudulent title opinion and by forging Attorney Yanacheck's signature to the letter and alleged title opinion. Second, in responding to the defendant's objection the court ruled that because the government was only introducing the alleged privileged document for the limited purpose of comparing the characteristics of the type style of the letter with that on the forged documents, the government was not relying upon any "communications" contained in the defendant's letter protected by the attorney-client privilege. On appeal the defendant challenges the trial court's rationale concerning the waiver of the attorney-client privilege and the admission of the document for comparison purposes.

█ The defendant Weger would be justified in raising the attorney-client privilege only if the government sought to disclose the substance of a communication she made in confidence to her attorney because the privilege only "prohibits the disclosure of the substance of communications made in confidence by a client to his attorney for the purpose of obtaining legal advice," *United States v. Pipkins,* 528 F.2d 559, 562 (5th Cir.1976). *See also, United States v. Hodgson,* 492 F.2d 1175, 1177 (10th Cir. 1974). The attorney-client privilege is intended "to be strictly confined within the narrowest possible limits consistent with the logic of its principle," *In re Horowitz,* 482 F.2d 72, 81 (2d Cir.1973), *cert. denied,* 414 U.S. 867, 94 S.Ct. 64, 38 L.Ed.2d 86 (1973), and the privilege is designed to protect only such information a client communicates to his attorney so that the attorney may properly, competently and ethically carry out his representation. *Fisher v. United States,* 425 U.S. 391, 96 S.Ct. 1569, 48 L.Ed.2d 39 (1976). Indeed, the attorney-client privilege does not prohibit the disclosure of *all* communications between a client (i.e. the defendant) and her attorney:

"the privilege protects only the client's confidences, not things which, at the time, are not intended to be held in the breast of the lawyer, even though the attorney-client relation provided the occasion for the lawyer's observation of them."

*Clanton v. United States,* 488 F.2d 1069, 1071 (5th Cir.1974). Thus, before a court will prevent the government from introducing evidence relating to a communication between the defendant and her attorney on the grounds that the evidence is protected by the attorney-client privilege, the defendant must establish that the government intended to introduce the substance of the communication between the defendant and her attorney, as opposed to its form (type style characteristics), and further that the defendant intended the communication "to be held in the breast of her lawyer."

█ The defendant has failed to provide the court with any case law, nor have we found any support for her theory that the trial court erred in admitting the letter for the limited purpose of comparing the type style characteristics contained in the letter. However, in a somewhat analogous situation, the Fifth Circuit addressed the issue of whether a defendant's style of handwriting, as opposed to typewriting in the instant case, was covered by the attorney-client privilege. In *United States v. Pipkins,* 528 F.2d 559 (5th Cir.1976), upon the advice of his counsel the defendant provided a possible handwriting expert witness with a sample of his handwriting to be compared with the handwriting on several checks the defendant was charged with forging. After a preliminary comparison of the defendant's handwriting with the checks supplied by the government, the potential defense handwriting expert gave defense counsel a report incriminating the defendant. In light of the expert's opinion that the defendant had indeed forged the check, the defense decided not to call the expert as a witness at trial. The government sought disclosure of the handwriting expert's report under Fed.R.Crim.P. 16(c) and thereafter, over defense objection, the handwriting expert was called by the government and testified that the defendant's handwrit-

ing samples revealed that in all probability the defendant forged the checks. On appeal, the defendant alleged that the handwriting specimens he gave to his attorney and the defense handwriting expert were privileged communications. Citing *United States v. Cote*, 456 F.2d 142 (8th Cir.1972), the court disagreed with the defendant and ruled that the handwriting samples were not confidential because the attorney was merely the conduit to turn the handwriting samples over to the expert with the defendant's consent, and courts have refused to apply the attorney-client privilege "to information a client intends his attorney to impart to another." 528 F.2d at 563. Furthermore, the *Pipkins* court held that the attorney-client privilege protects only the *substance* and not the *form* of communication used by a client when communicating in confidence with his attorney, and, as "a general rule, identifying physical characteristics such as one's style of handwriting, readily observable by anyone, are not subject to the attorney-client privilege." *Id.* at 530. Because the attorney-client privilege protects only the substance of the communication and not its form (the defendant's style of handwriting), the court ruled that the attorney-client privilege did not preclude the government from using the handwriting sample as evidence at trial.

Courts, as in *Pipkins,* have limited the application of the attorney-client privilege to prohibit only the disclosure of the substance of communications intended by a client to be held in confidence by the attorney, and thus the burden is on the defendant in the instant case to prove that the government intended to use the letter at trial to reveal the substance or content of the "privileged" communication. The defendant has failed to meet this burden. In the instant case, the government used the defendant's letter only to allow a documents expert to examine the *form* (characteristics of the type style) of the communication and we have not been presented with nor have we found any case law supporting the defendant-appellant's theory that type style characteristics have ever been considered to be "intrinsically confidential attributes." The characteristics of type style,

like a defendant's style of handwriting, are simply identifying physical characteristics, "readily observable by anyone [and] not subject to the attorney-client privilege." Additionally, the government's FBI expert document examiner testified only as to the similarity between the characteristics of the style of type on the defendant's letter to her attorney as compared with the purported title opinion forged by the defendant. No testimony was offered relating to the content of the letter itself. While it is true that the jury may have been able to observe the content of the letter by reading it when comparing the similarity in the type style, we have reviewed the content of this letter and note that the 1978 letter does not relate to any of the crimes the defendant is presently charged with and is thus not incriminating. The letter of a few years past merely recites the defendant's instructions to her attorney at the Petrie, Stocking law firm concerning a suit that arose out of the disposition of her father's estate. Therefore, while the defendant claims it was error to allow the jury to read the letter, we hold that since the content of the letter is innocuous at best, no substantive rights of the defendant were violated.

Our decision that the attorney-client privilege does not prevent the disclosure of the form (the type style characteristics) of a privileged communication is further buttressed by the fact that the form of a communication is not excluded from evidence by the application of the fifth amendment. For example, in *Gilbert v. California,* 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178 (1967), the Supreme Court held that the admission into evidence of handwriting exemplars did not violate a defendant's fifth amendment privilege against self-incrimination:

"The privilege reaches only compulsion of 'an accused's communications, whatever form they might take, and the compulsion of responses which are also communications, for example, compliance with a subpoena to produce one's paper,' and not 'compulsion which makes a suspect or accused the source of "real or physical evidence" ....' *Schmerber v. California,* 384 U.S. 757, 763–764 [86 S.Ct. 1826,

1831–1832, 16 L.Ed.2d 908]. One's voice and handwriting are, of course, *means* of communication. It by no means follows, however, that every compulsion of an accused to use his voice or write compels a communication within the cover of the privilege. A mere handwriting exemplar, *in contrast to the content* of what is written, like the voice or the body itself, *is an identifying physical characteristic* outside its protection."

*Id.* at 266–67, 87 S.Ct. at 1953–1954 (emphasis supplied). Similarly, we hold that the characteristics of the type style of the defendant's letter to her attorney are merely "identifying physical characteristics," and not protected by the attorney-client privilege.

Next, we address the issue of whether the defendant waived her right to assert the attorney-client privilege when she forged her attorney's signature to a purported title opinion on the law firm's letterhead stationery.

 It should be noted that the attorney-client privilege was not created to shield clients from charges for fraudulent conduct, and a client who abuses the attorney-client relationship waives the attorney-client privilege. *Clark v. United States,* 289 U.S. 1, 15, 53 S.Ct. 465, 469, 77 L.Ed. 993 (1933). Beyond doubt, the taking of a lawyer's letterhead stationery without his consent and the use of the same in a forgery scheme to fraudulently obtain loans from a bank is an abuse of the attorney-client relationship. In this fact situation there is *prima facie* evidence that the client abused the attorney-client relationship in the taking of her attorney's letterhead stationery and using it to commit a fraud, and thus "the seal of secrecy is broken" and the attorney-client privilege is waived. *In re Special September 1978 Grand Jury Proceedings (II),* 640 F.2d 49, 61 (7th Cir.1980).

The disclosure of a client's confidences, if in fact they are confidences, is authorized by Disciplinary Rule 4–101(C)(4) of the Code of Professional Responsibility which provides that:

"A lawyer may reveal

\* \* \* \* \* \*

(4) confidences or secrets necessary to defend himself or his employees or associates against an accusation of wrongful conduct."

While it is true that there were no formal charges brought against the law firm in the instant case, based on the fact that the fraudulent title opinion was submitted on the law firm's letterhead stationery, there could have been a reasonable belief on the part of government officials that the law firm had been involved in the preparation of the fraudulent title opinion until such time as the firm could show that its letterhead stationery was used without its permission. The code of legal ethics thus affords an attorney the opportunity to exonerate himself and defend against potential criminal charges or charges of attorney misconduct by allowing the attorney to disclose information to the government when a client has allegedly used the attorney's letterhead stationery and/or legal forms in the furtherance of the commission of a fraud.

Contrary to the defendant's argument that the Petrie, Stocking law firm should not have released the letter because no formal charges had been brought against the firm, DR4–101(C)(4) of the Attorney's Code of Professional Responsibility has been interpreted by the courts to allow attorneys to reveal their clients' confidences even though the attorneys have not been charged with a crime or ethical misconduct. For example, in *Application of Friend,* 411 F.Supp. 776 (S.D.N.Y.1975), an attorney applied to the court for leave to release certain confidential documents to a Grand Jury that was investigating both the attorney and his client. In granting the attorney's request, the court relied on DR4–101(C)(4) and reasoned:

"Although, as yet, no formal accusation has been made against Mr. Friend, it would be senseless to require the stigma of an indictment to attach prior to allowing Mr. Friend to invoke the exception of DR4–101(C)(4) in his own defense."

411 F.Supp. at 777.

In the instant case, the law firm released the letter to demonstrate to federal authori-

ties that the firm had nothing to do with the drafting of the fraudulent title opinion and only incidentally to allow the government to make an analysis of the characteristics of the type style. As in *Friend,* it would be senseless to require the law firm to be stigmatized by an indictment prior to allowing them to invoke DR4–101(C)(4) in their own defense. Furthermore, since the defendant's 1978 letter did not relate to the substance of any criminal charges against her, this case is far more clear than one where a law firm releases an incriminating document. However, even if the document in the instant case related to the substance of the charges against the defendant, we would most likely hold that the law firm was correct in releasing the defendant's letter to demonstrate to the government that the law firm was not in any way involved in the preparation of the fraudulent title opinion. In any event, we hold the defendant waived the attorney-client privilege by presenting the bank with a forged title opinion on her attorney's letterhead stationery, and it was entirely proper for an attorney with the Petrie, Stocking law firm to release to the government a nonincriminating letter typed on the defendant's typewriter which demonstrated that in fact the law firm had not prepared the fraudulent documents on their typewriters and incidentally allowed the government to compare the characteristics of the type style of that letter with those on the purported title opinion.

## EVIDENCE OF REPAYMENT

During the presentation of its case, the government queried a former loan officer of the Community National Bank as to whether the defendant had repaid any of the $70,000 principal on her loans from the bank. The loan officer was allowed to answer, over defense objection, that to the best of her knowledge there had been no payments on the principal as of April, 1982. The defense objected to this testimony on the grounds that evidence of repayment of the loan was not material to the question of whether the defendant intended to deceive the bank at the time she filed her loan application. After the government introduced the evidence of nonrepayment, the defense was given the opportunity to rebut this evidence and presented the testimony of an attorney for the Community National Bank who related that the defendant had made several interest payments during the life of the notes, and that after she had been charged with submitting fraudulent documents to the bank, an additional sum of $6,000 had been paid on the loan. At the conclusion of the case, again over the defense counsel's objection, the trial court gave the following instruction to the jury:

> "Now, evidence of repayment or nonrepayment of the loan in question has been received in this case. And that evidence may be considered by the jury only as it may have some bearing on the state of mind of the defendant, Kathleen Weger, at the time the government claims the documents were tendered to the bank in question in this case."

The defendant contends that it was error for the court to admit testimony relating to the defendant's payment or non-repayment of the loan and further that it was error for the court to instruct the jury that it could consider such repayment or non-repayment as evidence of the defendant's state of mind at the time she was alleged to have made the false statements to the bank. It is the defendant's position that evidence of whether she made or failed to make payments on the loan is not relevant to her state of mind at the time she submitted the fraudulent loan application and has no bearing on whether she intended to deceive the bank, *See United States v. Sabatino,* 485 F.2d 540 (2d Cir.1973), and thus she contends she was prejudiced by the introduction of the evidence of repayment and the subsequent instruction to the jury. While it could be argued that evidence of repayment or nonrepayment of the loan was of questionable relevance to the defendant's intent to deceive the bank at the various times she submitted the forged documents, when the record is read in its entirety, as it must be, the defendant has failed to prove to the satisfaction of this

court that the trial court erred in admitting this evidence, and even if there was error, the defendant has not shown that the error, if any, rose to the level of prejudicing her substantial rights.

 In deciding whether a defendant is entitled to a new trial based upon an alleged error which occurred during trial, appellate courts must inquire as to what effect, if any, "the error had or reasonably may be taken to have had upon the jury's decision." *United States v. Shepherd,* 576 F.2d 719, 723 (7th Cir.1978). Our inquiry must focus on what impact the error, if there was indeed error, may have had on the jury in light of the record as a whole, "not singled out and standing alone, but in relation to all that happened" during the trial. *Kotteakos v. United States,* 328 U.S. 750, 764, 66 S.Ct. 1239, 1248, 90 L.Ed. 1557 (1946). If after a review of the record this court finds that it is more probable than not that "the error did not influence the jury or had a very slight effect on its verdict," the error is deemed to be harmless error and the defendant's conviction will be affirmed. *United States v. Heller,* 625 F.2d 594 (5th Cir.1980).

 As noted at the outset, after the government introduced evidence that the defendant had failed to make payments on her loan, the district court also allowed the defendant to introduce testimony that she had indeed made some payments on the loan, thus giving her an opportunity to rebut the government's evidence. Thereafter, the jury was explicitly instructed that both the evidence of payment and/or nonrepayment of the loan could *only* be considered insofar as it related to the defendant's intent to deceive the bank at the time she submitted the fraudulent documents. Any alleged prejudice to the defendant was certainly more than remedied by the receipt of the defendant's evidence that she had made payments on the loan, coupled with the court's subsequent instruction to the jury that the jury must focus only on the defendant's intent at the particular time she submitted the forged documents to the bank to influence the bank to make the loan. After a review of the record it is clear that the government presented over-

whelming evidence of the defendant's guilt regardless of any of the alleged evidentiary errors on the part of the trial court. In making our determination that any alleged error on the part of the trial court was harmless, if in fact we were to agree there was error, this court "need not close its eyes to the reality of overwhelming evidence of guilt fairly established by use of evidence not challenged." *United States v. Mancino,* 468 F.2d 1350, 1352 (8th Cir.1972).

We hold that the trial court's alleged error, if in fact it was error, in admitting the evidence of nonrepayment was harmless error, and further hold that the district court was correct in ruling that the attorney-client privilege did not prohibit the government from introducing into evidence the defendant's letter to her former law firm for the limited purpose of using the letter to make a comparison of the characteristics of the type style. The defendant's conviction is therefore AFFIRMED.