**David POTTS, et al., Plaintiffs,**

v.

**ALLIS–CHALMERS CORP., et al., Defendants.**

**EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, Plaintiff,**

v.

**ALLIS–CHALMERS CORP., et al., Defendants.**

**Cause Nos. S84–189, S85–694.**

United States District Court, N.D. Indiana, South Bend Division.

May 28, 1987.

Thomas J. Brunner, Jr., South Bend, Ind., for plaintiffs Potts, et al.

Ellen K. Thomas, Maria C. Whittaker, Barbara Meacham, E.O.C., Indianapolis, Ind., for plaintiff E.E.O.C.

Richard H. Schnadig, Thomas Abrams, Chicago, Ill., John T. Mulvihill, Gregory L. Kelly, South Bend, Ind., for defendant Al-

lis-Chalmers Corp., d/b/a Allis-Chalmers Agr. & Material Handling Co.

Barry A. Macey, Mark T. Robbins, Indianapolis, Ind., and Timothy P. McLaughlin, South Bend, Ind., for defendants International Union, United Auto., Aerospace and Agr. Implement Workers of America Local 1319, UAAIW of America.

MEMORANDUM and ORDER

MILLER, District Judge.

At the conclusion of a hearing held on February 17, 1987, the court deferred ruling upon four motions: (1) the motion to compel discovery filed by plaintiff Equal Employment Opportunity Commission (hereinafter "EEOC") on November 20, 1986; (2) the motion for protective order filed by defendant Allis-Chalmers Corporation ("Allis-Chalmers") on December 15, 1986; (3) the motion to quash requests for production and subpoenas duces tecum filed by defendant Local 1319 of the United Automobile, Aerospace, and Agricultural Implement Workers of America—United Automobile Workers ("Local Union") on December 18, 1986; and (4) the EEOC's motion for leave to add a party and amend the complaint, filed January 5, 1987.

During the February 17th hearing, the Local Union announced that it had reached an agreement with the EEOC over the issues raised in the motion to quash and that the matter would be resolved by agreement in a week or two. To date the parties have filed nothing to demonstrate that the agreement has been worked out; however, the court continues to reserve ruling on that motion in light of the parties' statements.

On March 6, 1987, the parties filed a proposed agreed protective order. The court entered the protective order on March 10, 1987. That order renders Allis-Chalmers' motion for protective order moot.

Accordingly, two motions by the EEOC are before the court: the motion to compel discovery from Allis-Chalmers and the motion for leave to add a party and amend the complaint.

## *I. EEOC's Motion to Compel Discovery*

The parties have reached agreement over a substantial portion of the discovery the EEOC seeks. The remaining issues relate to: (1) compelling identification and production by Allis-Chalmers of documents by in-house counsel and employees relating to the applicability of the Age Discrimination in Employment Act ("ADEA"); (2) compelling Howard Equitz to answer deposition questions; (3) compelling identification of separation plans in plants other than the LaPorte Plant; and (4) compelling supplementation of responses to several other interrogatories. Each of these matters will be addressed individually.

### *A. Internal Correspondence After January 1, 1984*

The EEOC seeks responses to its Interrogatory No. 1.29[1] and its Request for Production No. 9,[2] seeking documents cre-

1. Interrogatory 1.29 reads as follows:

   Identify in a manner sufficient for a notice to produce pursuant to Rule 34 all memoranda, documents, or notes generated by Allis-Chalmers, or received by Allis-Chalmers, which discussed or referred to the applicability of the ADEA to any aspect of Allis-Chalmers' employee plans, including the company SUB plan and Special Separation Pay Plan.

   Allis-Chalmers responded:

   The decision, all briefs and non-privileged correspondence and memoranda in *Kukuvich v. Allis-Chalmers Corporation,* E.R.D. Case # 7300388, State of Wisconsin, Department of Industry, Labor Relations; all decisions briefs, and non-privileged correspondence and memoranda in the *EEOC v. American Air Filter, EEOC v. Allis-Chalmers Corporation,* and *Potts, et al. v. Allis-Chalmers Corporation, et al.,* litigation identified in response to Interrogatory No. 1.10. Defendant objects to Interrogatory 1.29 to the extent it seeks privileged attorney-client communications and attorney work product.

2. The EEOC's Request for Production of Documents No. 9 reads as follows:

   A copy of all memoranda, documents, notes, or other written material generated by Allis-Chalmers or received by Allis-Chalmers which discuss or refer to the applicability of the ADEA to any of Allis-Chalmers' employee plans, including the SUB Plan and Special Separation Pay Plan, discussed in Plaintiff Commission's First Set of Interrogatories Di-

ated by Allis–Chalmers after January 1, 1984 [3] which discuss the ADEA's applicability to severance plans used by the company when closing its LaPorte plant. The EEOC seeks to discover all documents generated by Allis–Chalmers' employees (some of whom were attorneys) relating to the company's awareness of the ADEA and the ADEA's applicability to their severance plans.

Allis–Chalmers responds that (1) such materials are wholly irrelevant to the issues in this action relating to the November 18, 1983 closing of the LaPorte plant, and (2) even were the materials sought relevant to some issue in this action, the materials are privileged as confidential attorney-client communications and attorney work product. Allis–Chalmers further requests that, should the court find the materials sought generally relevant, the court review the materials *in camera* to assess the privilege claims.

The EEOC replies that it cannot argue the materials' relevance, because Allis–Chalmers has not identified them. The EEOC argues that such documents generally would be relevant to its assertion that Allis–Chalmers acted in willful violation of the ADEA: the materials might show, or lead to proof of, Allis–Chalmers' willfulness. The EEOC further asserts that the materials are not privileged, because the attorney-client privilege covers only the client's communications to his attorney and the attorney work product privilege covers only materials prepared in anticipation of litigation or for trial in the case in which the privilege is claimed. Finally, as to the work product claim, the EEOC requests that the court compel production because the EEOC has a substantial need for the materials, which it cannot obtain without undue hardship, outweighing the company's asserted privileges.

■ After a thorough review of the matter, this court concludes that the privilege arguments raised by Allis–Chalmers in their objection to Interrogatory 1.29 are without merit. As Interrogatory 1.29 seeks identification of documents; this is permissible discovery under Rule 26.

■ Until the documents are identified to the EEOC, the court is unwilling to undertake *in camera* review of the documents sought in Request for Production No. 9, to assess the claims of attorney-client and work product privileges. A claim of privilege must be made on a statement-by-statement or document-by-document basis; a blanket claim of privilege is not acceptable. *United States v. Lawless,* 709 F.2d 485, 487 (7th Cir.1983); *United States v. First State Bank,* 691 F.2d 332, 335 (7th Cir.1982). The court defers ruling on the EEOC's motion to compel production of documents under its Request No. 9 until the EEOC specifies the particular documents it seeks to discover and the legal authority for each request.

### *B. Motion To Compel Deposition Responses by Howard Equitz*

■ Howard Equitz was among Allis–Chalmers' in-house attorneys. The EEOC seeks an order compelling Mr. Equitz to respond to four questions posed to him during depositions held on August 5, 1986 and September 5, 1986. The EEOC appears to assert three generally applicable reasons to compel Mr. Equitz to respond to the deposition questions:

(1) the communications are not "confidential" because Allis–Chalmers has produced pre-lawsuit position statements to the Indianapolis EEOC office, and those

rected at Defendant Allis–Chalmers, Interrogatory No. 1.29.

Allis–Chalmers responded:

Allis–Chalmers objects to the request to the extent it requests information with respect to privileged attorney-client communications or attorney work product. Allis–Chalmers also objects to the production of the various documents submitted to it by the EEOC, copies of which presumably remain in the EEOC's possession. Further responding, see documents previously submitted to the EEOC enclosed herewith.

3. The parties entered into an agreed protective order covering materials relating to in-house correspondence on the applicability of the ADEA which were created before January 1, 1984.

statements have also been released to the Memphis EEOC office;

(2) the attorney-client privilege does not apply because Mr. Equitz was acting, not as Allis–Chalmers' "legal advisor", but rather as a "manager"; and

(3) the attorney-client privilege covers attorney-initiated communications to the client only if the communications reveal confidential information communicated by the client.

The pre-lawsuit position papers disclose no communications; the deposition questions do not seek disclosure of managerial advice. The third ground requires further inquiry.

1.

Because the court's jurisdiction over these claims is based on a federal question under Title VII of the Civil Rights Act of 1964, the "contours and exceptions" of the attorney-client privilege "are clearly a matter of federal common law", *In re Pebsworth,* 705 F.2d 261, 262 (7th Cir.1983); Fed.R.Evid. 501. The attorney-client privilege shields confidential communications between an attorney and his client made for the purpose of furnishing or obtaining professional legal advice and assistance. 8 J. Wigmore, *Evidence* §§ 2292, 2311 (McNaughton Rev. 1961). The Seventh Circuit has adopted Dean Wigmore's statement of the conditions necessary for the establishment of the privilege: (1) where legal advice of any kind is sought (2) from a professional legal advisor in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by his legal advisor, (8) except the protection be waived. J. Wigmore at § 2292, *quoted in Radiant Burners, Inc. v. American Gas Ass'n,* 320 F.2d 314, 318–19 (7th Cir.), *cert. denied* 375 U.S. 929, 84 S.Ct. 330, 11 L.Ed.2d 262 (1963). "The attorney-client privilege is intended 'to be strictly confined within the narrowest possible limits consistent with the logic of its principle'." *United States v. Weger,* 709 F.2d 1151, 1154 (7th Cir.1983), *quoting In re Horowitz,* 482 F.2d 72, 81 (2nd Cir.), *cert. denied* 414 U.S. 867, 94 S.Ct. 64, 38 L.Ed.2d 86 (1973). The burden of establishing the privilege lies with the party asserting it. *United States v. Tratner,* 511 F.2d 248, 268 (7th Cir.1975).

The questions here at issue lie beyond Dean Wigmore's original definition. The EEOC seeks to discover communications from the attorney to the client. Common law courts, while agreeing that the attorney-client privilege reaches an attorney's confidential communications to the client, dispute the scope of the privilege when so applied. *United States v. Ramirez,* 608 F.2d 1261 n. 12 (9th Cir.1979); *Ohio–Sealy Mattress Mfg. Co. v. Kaplan,* 90 F.R.D. 21, 28 (N.D.Ill.1980); *North American Mortgage Investors v. First Wisconsin National Bank,* 69 F.R.D. 9, 12 (E.D.Wis.1975). Three approaches have been tried.

The narrowest approach protects only communications from the attorney that would reveal a confidential communication from the client. *United States v. Silverman,* 430 F.2d 106, 122 (2nd Cir.1970); *Ohio–Sealy,* 90 F.R.D. at 28. This approach seeks to tailor the privilege narrowly to its purpose, for there is no reason that an attorney would otherwise avoid confiding in his client. This narrow approach presents a risk of disclosure of privileged information in the process of securing its protection.

The broadest approach protects all communications from the attorney to his client regardless of relationship to client communications. *United States v. Amerada Hess Corp.,* 619 F.2d 980, 986 (3rd Cir.1980); *In re LTV Securities Litigation,* 89 F.R.D. 595, 602 (N.D.Tex.1981). Dean Wigmore appears to have advocated this approach. 8 J. Wigmore, *Evidence* § 2320 at 628 (McNaughton Rev. 1961). While easy to apply, this approach appears to run contrary to the expressed intention of the Seventh Circuit to confine the privilege to the narrowest limits consistent with the privilege's purpose. *Radiant Burners,* 320 F.2d at 323; *see Weger,* 709 F.2d at 1154.

The other approach protects all attorney-initiated communications that are "based upon" privileged communications from the

client. *In re Sealed Case,* 737 F.2d 94, 99, 101 (D.C.Cir.1984); *Mead Data Central, Inc. v. United States Dept. of Air Force,* 566 F.2d 242, 254 (D.C.Cir.1977).

The EEOC seeks discovery of Mr. Equitz's communications to his client. The EEOC contends that Mr. Equitz's recommendations to his client are crucial for its proof on the element of willfulness as defined in *Trans World Airlines, Inc. v. Thurston,* 469 U.S. 111, 105 S.Ct. 613, 83 L.Ed.2d 523 (1985).

The court concludes that attorneys' communications to their clients are not uniformly privileged. Beyond this, resolution of the conflict of the case law in this area is unnecessary for decision in this case, and thus would be improper. The court rejects Allis-Chalmers' assertion that attorney-initiated communications are uniformly privileged in the context of this action. The court must examine each disputed question.

2.

The EEOC asked Mr. Equitz to reveal recommendations he and other members of in-house counsel made to Allis-Chalmers in the wake of a district court decision addressing an age discrimination charge under a separation plan.[4] This is the only question of the four now in contest that seeks disclosure of legal advice.

In light of the court's conclusion that attorney-initiated communications are not uniformly privileged, Mr. Equitz cannot avoid this question under the attorney-client privilege. To prevent an answer, Allis-Chalmers must establish that Mr. Equitz's answer would either disclose or rely upon confidential communications from his client; no such showing has been made. The EEOC is entitled to an answer to this question.

3.

The second certified question asks Mr. Equitz whether he remembers advising Allis-Chalmers on a particular occasion.[5]

4. The disputed question arose in the following context:

MS. WHITTAKER [counsel for the EEOC]:

Q. Subsequent to the District Court decision in Bordens which we discussed earlier, what was Allis-Chalmers' position as far as whether the separation pay plan provision that employees eligible for pension benefits would not be eligible for the separation pay was a violation of the Age Act?

MR. ABRAM [counsel of Allis-Chalmers]: Again I will object only to the extent that as I said, Mr. Equitz is not the authorized agent to state what the position was. It was not to the extent he was involved in discussions which are not privileged discussions and the determination of a position might have been taken. He is certainly free from any privilege that we would assert to answer those questions.

MS. WHITTAKER:

Q. Do you know the answer to that question, Mr. Equitz?

A. I don't know if there ever was a—we'll call it a comprehensive or official formal position of Allis-Chalmers. I know that various people whose job entailed looking into it looked into this and made assessments and analyses and offered opinions and comments, but—

Q. And who were these persons that looked into the applicability of Bordens to various Allis-Chalmers' separation pay plans?

A. These would have been the group of lawyers internal to Allis-Chalmers' organization that had different degrees of responsibility, the employment legal area. We have several times enumerated who they were.

Q. And that would include yourself?

A. Including myself, right.

Q. *What were the recommendations these persons made to the corporation at this time?*

MR. ABRAM: *Objection. That I think clearly does invade what we assert to be the privilege.*

MS. WHITTAKER:

Q. *Mr. Equitz, can you answer that question?*

A. *Again, since I was an attorney for the company and the company is the principal and I have just heard the principal not waive the privilege, I do not believe it is my place to address that unless ordered to do so in some way.*

Q. *Are you refusing to answer the question?*

A. *Yes.*

Q. *I would like to have that questioned certified.* Now, based upon that advice of Allis-Chalmers' attorneys, including yourself gave to it which you did not just reveal to me, what was Allis-Chalmers' position as to this advice.

MR. ABRAM: Again, I'll object to the question if it's asking for Mr. Equitz to state the official position of Allis-Chalmers because he's not the authorized agent to make that position.

(Mr. Equitz's deposition taken on August 4, 1986, pp. 208-210) (emphasis added).

5. The certified question is underlined:

MS. WHITTAKER:

Q. Were you asked by the corporation what would it be for it to do regarding the pertinence of the Bordens case?

Counsel for the EEOC did not ask for the substance of Mr. Equitz's advice, but only whether he remembered rendering advice. Had counsel for the EEOC sought to learn the substance of the discussions from Mr. Equitz, the answer might have implicated the attorney-client privilege if Mr. Equitz could not respond without basing his answers on confidential communications from Allis–Chalmers. No such privilege has been shown on the record before the court. Accordingly, the EEOC is entitled to an answer to the certified question.

4.

The third certified question asks Mr. Equitz if he recalled any of the substance of certain discussions he had with Allis–Chalmers officials.[6] Again, there is no privilege covering the recollection of the occurrence of a communication even if the substance of the communication is privi-

MR. ABRAM: Objection.

A. I don't remember it being asked specifically in any way.

Q. Was it asked in another way or was it implied that such advice was being sought from you?

MR. ABRAM: Objection as to attorney-client privilege.

A. Well, I mentioned that I will be observing the privilege, but I simply don't recollect that point at all.

Q. So you don't recollect whether the company ever asked you as you put it, whether it would be wise for—what would be wise for the company to do regarding the pertinence of the Borden's decision to it?

MR. ABRAM: I am also going to object just for clarification purposes. You continue to talk about the company as a monolith. Are you talking about anybody within the company?

MS. WHITTAKER: Do you understand the question, Mr. Equitz?

THE WITNESS: Well, as I understand it, maybe a word of clarification would be helpful. As I understand it, you are asking me whether I was specifically asked after what we have been talking about as a legal discussion of the issue against the background of that legal discussion what would be wise for the company to do?

MR. ABRAM: And I am going to object to the extent that answer calls for privileged attorney-client information.

MS. WHITTAKER: Once again, I'm not asking for the substance at this point. I'm simply asking him to identify whether such conversation took place.

MR. ABRAM: I think that the privilege goes to a client going to counsel and asking that advice as well. That's why I am objecting to that question.

MS. WHITTAKER:

Q. Mr. Equitz, let me clarify because that's not exactly what I'm asking.

A. Okay.

Q. Okay. You said that you discussed whether this case was pertinent to the company with Mr. Platner, Fitzsimmons and Grigsby. That's correct, right?

A. Yes, and possibly some other people.

Q. You said that when you in the general course of things, when you have such discussions, it's not only legal issues that you consider but other things as well. Is that a correct recaption of what you've been telling me?

A. Yes. We may consider other things as well as was relevant to the question.

Q. Okay. So let me ask you, did you consider in these discussions of whether Bordens was pertinent to the company, were other issues besides legal considered?

MR. ABRAM: I am going to have to object to that to the extent I'm not sure that I see how that's different from asking his opinion work product. But to the extent that it does implicate attorney-client privilege or attorney work product, that is the extent of my objection.

MS. WHITTAKER: Ms. Munns, could you read the question back?

(Whereupon the pending question was read by the reporter as above recorded.)

THE WITNESS: I don't really recollect.

MS. WHITTAKER:

Q. Do you recollect if you advised the company at this time during these discussion?

MR. ABRAM: Objection on previously stated grounds.

THE WITNESS: I think this is in the area of attorney-client privilege and I would not answer for that reason unless and until the principal elected to waive that confidence or there was an effective order requiring it.

(Mr. Equitz's deposition taken on September 5, 1986, pp. 30–34) (emphasis added).

6. The certified question is underlined:

MS. WHITTAKER:

Q. Do you recall at this time any of the substance of those discussions?

MR. ABRAM: Objection, attorney-client opinion, work product privilege grounds.

THE WITNESS: I would not answer for the reason that there is a privilege which the principal believes exists. I don't think it's my role to invade it.

MS. WHITTAKER:

Q. Do you understand the question?

A. Yes.

Q. Okay. Could you please certify that question as well, Mrs. Munns.

(Mr. Equitz's deposition taken on September 5, 1986, p. 36) (emphasis added).

leged. Allis-Chalmers bears the burden of demonstrating that the information would be privileged; because Allis-Chalmers has not yet met that burden, the court cannot say that the question is not reasonably calculated to lead to the discovery of admissible evidence. Mr. Equitz will be compelled to respond to this question.

5.

The fourth certified question asks Mr. Equitz if he knew why Allis-Chalmers did not change its plans in light of a district court opinion determining its viability under the ADEA.[7] This question seeks no disclosure of confidential information; it merely seeks to discover whether Mr. Equitz knew what Allis-Chalmers' motivation was. If Mr. Equitz knows the reason due to confidential communications from his client, the reason itself would be privileged, but the attorney-client privilege is not implicated by the inquiry whether Mr. Equitz knows the reason. Because Mr. Equitz may know of the reason from sources other than confidential communications, the question is reasonably calculated to lead to relevant evidence. Accordingly, Mr. Equitz will be compelled to respond to this question as well.

### C. *Updating Identification of Other Separation Pay Plans*

The EEOC seeks an order compelling Allis-Chalmers to update its responses to Interrogatories 1.05,[8] 1.30,[9] and 1.31,[10]

7. The fourth question arose in the following context:

MS. WHITTAKER:

Q. As a result of your discussions with Platner, Fitzsimmons, Grigsby and others regarding the pertinence of the Bordens decision to the company, were any actions taken by the company?

A. I don't recollect any.

Q. Do you know why not?

MR. ABRAM: I am going to object to the extent that it would call for an answer that would infringe upon any attorney-client privilege.

THE WITNESS: Well, I'll take the same position with respect to the privilege that I would answer because I feel it's the principal's place either to waive the confidential relationship or for an order effectively to be entered requiring it.

(Mr. Equitz's deposition taken on September 5, 1986, p. 37) (emphasis added).

8. Interrogatory 1.05 states:

List which Allis-Chalmers' facilities have or have had, since November 1, 1982, a SUB Plan similar or identical to the "SUB Plan" identified by Allis-Chalmers in its Response and Objections to Plaintiff David Potts' First Set of Requests for Admissions, No. 1.01. This list should state:

a. the name and address of that facility;

b. the size of that facility;

c. the operations carried out and products produced at that facility;

d. the number of employees employed at that facility;

e. whether that facility is presently open and if not when it was closed;

f. whether that facility is unionized; and, if so, the name of the local an international union and the names of the local union officers; and

g. a description of the SUB Plan agreement for each facility sufficient for a notice to produce pursuant to Rule 34.

Allis-Chalmers responded:

See response to Interrogatory No. 1.03. Further responding, Defendant states that employees of the LaPorte, Indiana plant who were represented by Local 1319 of the UAW were covered by the SUB Plan referred to in Plaintiff David Potts' First Set of Requests for Admissions No. 1.01. Further responding with respect to the LaPorte Plant ...

Allis-Chalmers supplemented its response in a letter from Mr. Abram to Ms. Whittaker dated August 26, 1986 (EEOC's Exhibit 3 to the motion to compel), in which he stated:

Interrogatories Nos. 1.05-1.06 seek information concerning termination pay plans at Company facilities other than the LaPorte plant. Included in our response to Request for Production No. 9 is a submission to the EEOC filed by James Barkley with respect to Charge No. 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 investigated by the EEOC's Memphis office which contains copies of all termination pay plans which were or have been in effect at Allis-Chalmers facilities.

Allis-Chalmers also produced its 1982 Annual Report, which includes a list of "Allis-Chalmers Worldwide Organization" (EEOC's Exhibit 4 to the motion to compel).

9. Interrogatory 1.30 states: Does Allis-Chalmers have plans to close any of its other facilities in the U.S.? Allis-Chalmers responded: Defendant objects on the grounds that Interrogatory 1.30 seeks information that is irrelevant, immaterial, and not calculated to lead to admissible evidence.

10. Interrogatory 1.31 states:

If your answer to Interrogatory 1.30 is in the affirmative, state:

a. what facilities Allis-Chalmers plans to close;

b. when Allis-Chalmers plans to close these facilities;

which deal with separation pay plans in effect at Allis–Chalmers' plants other than the LaPorte plant. The EEOC contends that Allis–Chalmers' response to Interrogatory 1.05 is outdated because it was dated in 1983 and Mr. Equitz has testified that some facilities were closed after 1983. (EEOC Exhibit 5 to motion to compel). The EEOC asserts that Allis–Chalmers waived its right to object to Interrogatory 1.05 by its partial response. The EEOC also asserts that Interrogatories 1.30 and 1.31 are reasonably calculated to lead to admissible evidence on the legality of the plan now in dispute and on the issue of willfulness.

Allis–Chalmers responds that it has already provided discovery responses identifying all of Allis–Chalmers' separation pay plans and setting out their provisions. Allis–Chalmers contends that these matters are irrelevant to the issues in this action under the Magistrate's order, and that, to the extent that the EEOC seeks responses updating information after 1983, the EEOC seeks information irrelevant to the allegations in this action.

Interrogatories 1.05, 1.30, and 1.31 seek information relating to Allis–Chalmers' severance pay plans to the present. Allis–Chalmers responded by providing information that was current when the LaPorte plant was closed and did not object when it responded to the relevancy of later information. Allis–Chalmers has waived its objection to the information already disclosed by not raising it at the time of its response.

Allis–Chalmers has not disclosed information concerning matters after the closing of the LaPorte plant. The court finds no waiver as to matters not disclosed. The record does not suggest that current information on Allis–Chalmers' severance pay plans is reasonably calculated to lead to admissible evidence in this action. The EEOC contends that such information will assist its counsel by helping her understand how the corporation operates; overall helpfulness, however, is not the standard by which the scope of discovery is judged.

A willful ADEA violation is not made more likely by the absence of similar severance pay plans at other Allis–Chalmers' plants, or by the existence of similar plans that were or were not modified after the LaPorte plant was closed. Such information is not reasonably likely to lead to admissible evidence. The court assumes that if Allis–Chalmers refers at trial to current severance pay plans by way of defense to the claims against it, the EEOC will raise an objection under Federal Rule of Evidence 403.

*D. Miscellaneous Matters*

The EEOC has moved for additional information on Interrogatories 1.03, 1.04, 1.11(c), 1.13, 1.14, 1.18, 1.19, 1.25, 1.29, and Request for Production No. 8. At the time of the hearing on this motion, Allis–Chalmers agreed to supplement its answers on all of these matters, save Interrogatory 1.25 and Request No. 8 which it claims to have answered fully. In light of Allis–Chalmers' agreement with respect to Interrogatories 1.03, 1.04, 1.11(c), 1.13, 1.14, 1.18, 1.19, and 1.29, the court will order Allis–Chalmers to supplement its responses to these interrogatories.

The EEOC asks Allis–Chalmers to clarify its responses to Interrogatory 1.25 and Request for Production No. 8, in which the EEOC seeks Allis–Chalmers' records relating to union meetings held at the plant on company time. Allis–Chalmers has responded that it does not possess such records. The EEOC contends that reference to such records was made during the deposition of Alfred Sparks. At the hearing on the motion to compel, Allis–Chalmers' counsel stated that the records had not yet been located, and that they would be disclosed as soon as they were located.

c. whether Allis–Chalmers negotiated, or is negotiating or presently has a special separation pay plan for the employees at those facilities;
d. the name of the local union at that facility, if any; and
e. the terms of this provision for special separation pay, if any.

Allis–Chalmers responded: Not applicable.

Allis–Chalmers has made a proper response to Interrogatory 1.25 and Request for Production No. 8. The court will compel no further clarification.

*E. Order*

Therefore, the court now ORDERS that plaintiff Equal Employment Opportunity Commission's motion to compel is GRANTED IN PART insofar as it seeks to compel responses to Interrogatories 1.03, 1.04, 1.05, 1.11(c), 1.13, 1.14, 1.18, 1.19, 1.29, 1.30, and 1.31, and to compel Mr. Equitz to respond to the four certified deposition questions; DENIED IN PART insofar as it seeks to compel responses to Interrogatory 1.25 and Request for Production No. 8; DENIED insofar as it seeks to compel responses to Interrogatories 1.05, 1.30 and 1.31; and DEFERRED IN PART insofar as it seeks to compel a response to Request of Production No. 9. SO ORDERED.

*II. The EEOC's Motion for Leave to Add a Party and Amend its Complaint*

The EEOC moves to amend its complaint by adding the International Union, United Automobile, Aerospace and Agricultural Implement Workers of America—United Automobile Workers ("the International") as a party-defendant. The following undisputed facts are relevant to the EEOC's motion: on November 29, 1985, the EEOC filed its complaint naming Allis–Chalmers and Local 1319 of the United Automobile, Aerospace and Agricultural Implement Workers of America—United Automobile Workers ("Local 1319") as defendants and alleging that the defendants engaged in unlawful employment practices in November, 1983 when Allis–Chalmers closed its LaPorte plant.

The EEOC served Local 1319 by delivering the complaint to the International (apparently because the EEOC had no address for the agent of Local 1319) on December 5, 1985. Local 1319 ceased existence in March, 1985, a matter it raised as an affirmative defense in its January 31, 1986 answer. The International participated in discovery in this action by having its officials respond to the EEOC's interrogatories to Local 1319 and by providing Mr. Shoemaker for deposition by the EEOC. On January 5, 1987, the EEOC moved to amend the complaint to add the International as a defendant, claiming that the International was a party needed for just adjudication of this matter pursuant to Fed.R.Civ.P. 15(a) and 21. The proposed amended complaint contains the same allegations against the International as earlier had been directed at Local 1319.

The EEOC asserts that it has but recently learned, through discovery, that the International was primarily involved in negotiating and implementing the separation pay policy now in dispute. A motion to add a party is a matter for the court's discretion. The EEOC argues that no prejudice will result to any party because the International has been a named defendant in the consolidated *Potts* action from its inception, and that justice requires the change because Local 1319 no longer exists.

Counsel for Local 1319 filed a memorandum in opposition to the EEOC's motion on January 26, 1987, noting that the statute of limitations for the EEOC's ADEA action is two years for non-willful violations and three years for willful violations. *See* 29 U.S.C. § 255, as incorporated into the ADEA through 29 U.S.C. § 626(e)(1). The EEOC made no attempt to add the International until more than three years after the cause of action accrued; so amendment should be disallowed unless it would relate back to the date of the original filing under Fed.R.Civ.P. 15(c) [11]. Counsel for Local 1319 contends that the EEOC cannot satisfy two of the requirements for relation

**11.** Rule 15(c) provides that:

... An amendment changing the party against whom a claim is asserted relates back if the foregoing provision is satisfied and, within the period provided by law for commencing the action against him, the party to be brought in by amendment (1) has received such notice of the institution of the action that he will not be prejudiced in maintaining his defense on the merits, and (2) knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against him.

back under Rule 15(c): (1) the International did not receive "such notice of the institution of the action that [it] will not be prejudiced in maintaining [its] defense on the merits"; and (2) the International neither knew nor should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against it.

The EEOC replies that it has satisfied all of the relation back requirements necessary to add the International.

Despite a minor dispute over the tolling of the statute of limitation during a conciliation period of twenty-one days, the EEOC does not dispute that it filed its amended complaint after any applicable statute of limitations period had expired. Thus, Rule 15(c) is the only procedural avenue by which the EEOC's original complaint may be amended to add parties without running afoul of the statute of limitations. *Korn v. Royal Caribbean Cruise Line, Inc.,* 724 F.2d 1397, 1399 (9th Cir.1984); *Hughes v. United States,* 701 F.2d 56, 57 (7th Cir. 1982).

Courts applying Rule 15(c) "have generally examined the facts of the case to ascertain whether the allowance of such amendment would be inconsistent with the notice requirements inherent in such limitation". 3 J. Moore, *Moore's Federal Practice,* ¶ 15.15[4.–1], pp. 15–158 to 15–161. The Rule is to be liberally construed. *Hampton v. Hanrahan,* 522 F.Supp. 140 (N.D.Ill.1981); *DeMalherbe v. International Union of Elevator Contractors,* 449 F.Supp. 1335, 1354 (N.D.Cal.1978). When allowing plaintiffs to add a defendant, courts have looked for (1) an extremely close relationship between the original and the added defendants, (2) lack of prejudice to the added defendant, (3) the plaintiff's original intention, and (4) whether the plaintiff had a justification for failing to name the proper party. *Hampton,* 522 F.Supp. at 143.

The Supreme Court recently identified four requirements for an amendment naming additional parties to relate back to the filing of the original pleading pursuant to Rule 15(c):

> (1) the basic claim must have arisen out of the conduct set forth in the original pleading; (2) the party to be brought in must have received such notice that it will not be prejudiced in maintaining its defense; (3) that party must or should have known that, but for a mistake concerning identity, the action would have been brought against it; and (4) the second and third requirements must have been fulfilled within the prescribed limitations period.

*Schiavone v. Fortune, aka Time, Inc.,* 477 U.S. 21, 106 S.Ct. 2379, 2384, 91 L.Ed.2d 18 (1986).

The determinative inquiry here is whether the International, in light of its knowledge of the existence of the action, knew or should have known within the limitations period that but for a mistake the EEOC would have named it as a defendant in the original complaint. This inquiry is affected by the extent of the information known to the EEOC before the limitations period expired. A previously unnamed defendant:

> ... should not, in the face of the plaintiff's inaction during the limitations period, be held thereafter to know that but for a mistake in identity it would be joined as a party, particularly when [the unnamed defendant] had informed the plaintiff of the proper party and noted its indispensability well before the limitations period had run.

*Upshaw v. Equitable Life Assur. Soc.,* 85 F.R.D. 674, 678 (E.D.Ark.1980), *quoted in Kilkenny v. Arco Marine, Inc.,* 800 F.2d 853, 857 (9th Cir.1986). A plaintiff's failure to amend its complaint after being notified of a mistake concerning the proper party's identity may lead the unnamed party to conclude that the plaintiff is acting on grounds of strategy, rather than mistake. *Kilkenny,* 800 F.2d at 857; *Unicure, Inc. v. Thurman,* 97 F.R.D. 1, 6 (W.D.N.Y. 1982); *Rogatz v. Hospital General San Carlos, Inc.,* 89 F.R.D. 298, 301 (D.P.R. 1980); *Gutierrez v. Raymond International, Inc.,* 86 F.R.D. 684, 685 (S.D.Tex. 1980). Rule 15(c) protects plaintiffs who name a party mistakenly and then discover

the proper party's identity after the relevant statute of limitations has run. *Kilkenny*, 800 F.2d at 857. Rule 15(c) was not intended to assist a plaintiff who ignores or fails to respond reasonably to notice of a potential party. *Id.*

 The EEOC was fully aware from the litigation's outset that the International was a proper party. The EEOC was no less aware of the *Potts* litigation than was the International, and the International has always been a named defendant in the *Potts* action. The answer of Local 1319 notified the EEOC that Local 1319 was no longer in existence; that answer was filed well within the limitations period and long before the EEOC undertook to add the International. The EEOC's failure to discover the union's constitution until after the period had run is irrelevant; the EEOC was or should have been fully aware that the International was a proper party to this litigation long before the statute of limitations ran. The EEOC cannot be assumed to be a novice to suits against labor unions; this court will assume that it knew that the International was a separate entity from Local 1319.

This lack of justification for delay, when considered with the lack of identity of the parties, reasonably could make the EEOC's initial decision not to name the International as a defendant appear to be a strategy decision. Granting the EEOC's motion would cause no prejudice other than the loss of the statute of limitations defense, but the loss of that defense is prejudice enough: the International had no way of knowing that it would be added as a party during the statutory period. See *Simmons v. Fenton*, 480 F.2d 133, 136 (7th Cir.1973) (loss of a statute of limitations defense will be sufficient showing of prejudice in certain cases).

The EEOC should have been aware that it was mistaken, yet failed to remedy the error within the limitations period. As a result, the International did not know, and should not have known, that it would have been named in the original complaint but for the EEOC's mistake. Accordingly, the EEOC's proposed amended complaint can-

not relate back to the filing of the original complaint. Leave to amend a complaint under Rule 15(a) may be denied when the proposed amended complaint would assert a claim barred by the statute of limitations. *Norton v. International Harvester*, 627 F.2d 18 (7th Cir.1980).

For the foregoing reasons, the Equal Employment Opportunity Commission's motion for leave to add a party and amend the complaint should be, and hereby is, DENIED. SO ORDERED.