The Honorable Richard D. Reinhardt State Representative, 8th District R.R. #1, Box 118 Erie, Kansas 66733
Dear Representative Reinhardt:
As Representative for the Eighth District you ask our opinion whether a report on an investigation conducted by the attorney for the Neosho County Community College (NCCC) Board may be closed under the Kansas Open Records Act (KORA) as subject to the attorney-client privilege.
The facts you have given us are that a fight occurred at the Mexican Fiesta in Chanute, Kansas. The altercation involved both local residents and some NCCC students. Some were treated for injuries, and a NCCC wrestler received a five inch cut on his chest.
In addition to the Chanute police investigation, the local fiesta committee asked the NCCC Board members to investigate the matter to see which NCCC athletes and faculty may have been involved in the fight, and why. The Board elected to have their attorney, Kent Pringle, conduct an investigation. Only a brief summary of the investigation has been made public. The NCCC has refused to provide the complete report, arguing that it can be kept closed under the KORA as subject to the attorney-client privilege.
This office has not viewed any of the documents requested. The only additional information that we have been given comes from Mr. Pringle. He responds, in relevant part:
 "There is no document of record at Neosho County Community College to be produced. In executive session for consultation with me as attorney for the board, I reported summaries of confidential statements and information gathered by me as part of my investigation into the fight which occurred at the Mexican Fiesta in September 1998. Therefore the only records, other than the public summary prepared and released to the public, are in my files, and not in the possession of NCCC or any Board member.
. . . .
 "The Chanute Tribune requests copies of my `investigation' as attorney for the NCCC Board of Trustees. To fully comply with that request would require release of confidential statement summaries, legal opinions and advice given the Board of Trustees, tapes of interviews conducted, etc., all of which are in my files and are not at NCCC."
Mr. Pringle goes on to state that he conducted the investigation under the "very real" threat of litigation.
The KORA defines a "public record" as
 "any recorded information, regardless of form or characteristics, which is made, maintained or kept by or is in the possession of any public agency. . . ."[1]
The NCCC Board is a public agency for purposes of the KORA.[2]
A private attorney is obviously not a public agency. However, although the KORA literally only speaks to documents made, maintained, kept by or in the possession of a public agency,[3] we do not think a public agency can insulate documents from KORA application by having a private attorney maintain sole possession of them. The word "attorney" generally means "agent, or substitute, one who is appointed and authorized to act in the place or stead of another."[4] As an agent, we believe documents in Mr. Pringle's possession on behalf of NCCC are subject to the KORA's mandates as if they were directly in NCCC's possession. Otherwise, any public agency could the avoid the KORA's requirements simply by transferring their documents to an agent and claim they were no longer in the public agency's possession.
The real issue is whether there is an exception in the KORA allowing closure of the documents. Two exceptions are potentially relevant, one which allows closure of documents that constitute materials subject to the attorney-client privilege,[5] and one which allows closure of documents which constitute the work product of an attorney.[6]
The attorney-client privilege in Kansas is recognized by statute. K.S.A. 60-426 provides, in relevant part:
 "(a) General rule. Subject to K.S.A. 60-437, and except as otherwise provided by subsection (b) of this section, communications found by the judge to have been between lawyer and his or her client in the course of that relationship and in professional confidence, are privileged. . . .
. . . .
 "(c) Definitions. As used in this section (1) `client' means a person or corporation or other association that, directly or through an authorized representative, consults a lawyer or lawyer's representative for the purpose of retaining the lawyer or securing legal service or advice from the lawyer in his or her professional capacity . . .; (2) `communication' includes advice given by the lawyer in the course of representing the client and includes disclosures of the client to a representative, associate or employee of the lawyer incidental to the professional relationship; (3) `lawyer' means a person authorized, or reasonably believed by the client to be authorized to practice law in any state or nation the law of which recognizes a privilege against disclosure of confidential communications between client and lawyer."
On its face, K.S.A. 60-426 does not literally apply to the results of an investigation conducted by a lawyer. An investigation contains more than just legal advice, such as witness statements. One commentator has said of investigations done by a lawyer:
 "Factual investigations by themselves do not constitute the rendering of legal advice or assistance. Before the attorney-client privilege applies to communications relating to investigative services, the client for whom the investigation was conducted must show that other legal advice or assistance was sought and that the investigation conducted was integral to the assistance. The simple fact the person conducting an interview was an attorney does not automatically give rise to an attorney-client privilege protection for communications during that interview."[7]
In Sprague v. Thorn Americas, Inc.,[8] the Tenth Circuit Court of Appeals discussed the attorney-client privilege under both federal and Kansas law as it applied to an in-house counsel's investigation of disparate treatment of women by a company.
 "A dichotomy in treatment of the attorney-client privilege has been noted in several cases. In Loftis v. Amica Mutual Insurance Co., 175 F.R.D. 5 (D.Conn. 1997), the two general approaches were discussed. Under a narrower approach, the attorney-client privilege is held not to protect from disclosure a legal opinion and advice communicated in confidence by an attorney to his client where that opinion and advice do not reveal client confidences. Id. at 9-10. Predicting Connecticut law, Loftis held that the narrower approach should be applied and a letter from counsel to the client was denied protection. Id. at 10.
 "Loftis noted, however, that some courts have held that the privilege protects communications from the lawyer, regardless of whether the lawyer's communications reveal confidences from the client, citing United States v. Amerada Hess Corp.,
discussed above. Id. at 8-9. This broader approach has been applied in cases holding that any communication from an attorney to his client made in the course of giving legal advice is protected. In re LTV Securities Litigation, 89 F.R.D. 595, 602 (N.D.Tex. 1981). The LTV opinion rejects the narrower view, pointing out that the predictability of confidence is central to the role of the attorney and that `[a]doption of such a niggardly rule has little to justify it and carries too great a price tag.' Id. at 602. The LTV
opinion concludes that a broader rule prevails in the federal courts, one that protects from forced disclosure any communication from an attorney to his client when made in the course of giving legal advice, citing our opinion in Natta v. Hogan, discussed earlier. Id. The distinction between the narrow and broad approaches was also noted in Potts v. Allis-Chalmers Corp., 118 F.R.D. 597 (N.D.Ind. 1987). The court there concluded that attorneys' communications to their clients are not uniformly privileged but that resolution of the conflict of case law was not necessary for decision in that case. Id. at 603.
 "We are persuaded that our Natta v. Hogan opinion, 392 F.2d at 692-93, does represent an application of the broader rule, which was the view of the LTV opinion. We are further persuaded that under the wording of the statutory privilege in Kansas, K.S.A. § 60-426, the Kansas courts would apply the broader rule. That statute protects, inter alia, `communications found by the judge to have been between lawyer and his or her client in the course of that relationship and in professional confidence. . . ." § 60-426(a). Also K.S.A. § 60-426(c) defines `communication' to include 'advice given by the lawyer in the course of representing the client and includes disclosures of the client to a representative, associate or employee of the lawyer. . . .' (Emphasis added). In State of Kansas v. Breazeale, 11 Kan. App. 2d 103, 713 P.2d 973 (1986), the court held that the `lawyer-client privilege protects statements transmitting information between a lawyer and his client that are made in professional confidence.' (Syllabus 1 by the court). Because of the breadth of the language of the Kansas statute and the opinion interpreting it, we are convinced that the Kansas courts favor the broader approach, namely protecting an attorney's communications to his client without the qualification that the communications must contain confidential matters revealed by the client earlier to the attorney."[9]
The court concluded, under the facts:
 "We are persuaded that the critical memorandum of Westerhaus is protected by the attorney-client privilege. It was prepared for higher management by in-house counsel acting within the scope of his employment and . . . it related to the rendition of legal services and advice."[10]
In the present case, we do not know what documents were shown to the NCCC Board. We do not know what Mr. Pringle told them. We have to take at face value his assertion that the investigation was done primarily for the purpose of rendering legal advice and therefore the documents are protected by the attorney-client privilege. While Mr. Pringle's notations of statements of witnesses could also be analyzed as work product,[11] the question would be essentially the same — whether they were done in preparation for litigation.
Based upon the information we have been provided, we do not believe the documents held by Mr. Pringle as the result of his investigation of the fight must be produced pursuant to the KORA request, because they appear to be either protected under the attorney-client privilege or as work product.
Very truly yours,
 CARLA J. STOVALL Attorney General of Kansas
 Steve Phillips Assistant Attorney General
CJS:JLM:SP:jm
[1] K.S.A. 1998 Supp. 45-217(f)(1).
[2] See K.S.A. 1998 Supp. 45-217(e).
[3] K.S.A. 45-217(f).
[4] Black's Law Dictionary 128 (6th ed. 1990).
[5] K.S.A. 1998 Supp. 45-221(a)(25).
[6] K.S.A. 1998 Supp. 45-221(a)(2).
[7] 1 Rice, Attorney-Client Privilege in the United States, § 7:16 (2nd ed. 1999).
[8] 129 F.3d 1355 (10th Cir. 1997).
[9] Id. at 1370-71.
[10] Id. at 1370.
[11] K.S.A. 1998 Supp. 60-226(b)(3).