**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Marvin Jose RAMIREZ,**
**Defendant-Appellant.**

**No. 79–1106.**

United States Court of Appeals,
Ninth Circuit.

Nov. 7, 1979.

Rehearing Denied Nov. 20, 1979.

1262

J. William Beard, Jr., La Jolla, Cal., for defendant-appellant.

Irene Takahashi, Asst. U. S. Atty. (on the brief), Michael H. Walsh, U. S. Atty., Irene Takahashi, Asst. U. S. Atty. (argued), San Diego, Cal., for plaintiff-appellee.

Before CHOY and TANG, Circuit Judges, and RENFREW,* District Judge.

RENFREW, District Judge:

This is an appeal from a criminal conviction for violations of 21 U.S.C. §§ 952, 960 and 963 (importation and attempted importation of controlled substance) and 21 U.S.C. § 841(a)(1) (possession with intent to distribute controlled substance). Appellant and one Roger Zamora both had been charged with the drug offenses. The cases were severed and appellant was tried first.

After considering each of the points raised on appeal by appellant, we affirm.

### FACTS

The facts when viewed in a light most favorable to the Government as the prevailing party at trial, *Glasser v. United States*, 315 U.S. 60, 80, 62 S.Ct. 457, 86 L.Ed. 680 (1942), are as follows. Appellant and Zamora left San Francisco heading for Los Angeles for a weekend vacation. Appellant drove his 1973 Capri which, as Zamora explained, was paid for and owned by appellant but was registered in Zamora's name. En route to southern California, appellant pulled out a plastic bag containing a "little rock" or cocaine hidden below the console area attached to the stick shift, showed it to Zamora, and told him it was for an "emergency" if they needed some. Later that evening, they were stopped and cited by California Highway Patrol Officer Sergeant

Field. Appellant was the driver. Upon the officer's questioning, Zamora indicated he was the owner of the vehicle. Sometime after the stop, appellant removed from his pocket approximately ¼ to ½ gram of cocaine wrapped in a dollar bill. The two snorted the cocaine using a "coke spoon" pin appellant was wearing on his jacket. The two checked into a hotel in Tijuana and were joined by Esteban Leon, a friend of appellant. During the evening, the three went to a couple of nightclubs and snorted some of appellant's cocaine taken from the "rock". The next morning, appellant agreed to give Zamora a ride to the San Diego Airport. Before reaching the border checkpoint, Zamora became apprehensive about the cocaine and repeatedly asked appellant to leave it behind or throw it away. Appellant was driving as they approached the Port of Entry at San Ysidro, California. During questioning, the Customs Inspector noticed appellant began to show signs of nervousness, his face turned flush, and his speech quickened. At that point, Zamora interrupted and attempted to befriend the inspector. The inspector became suspicious and inspected the vehicle. He found small quantities of marijuana and a bag containing what the parties stipulated to be five grams of cocaine.

The appeal attacks the conviction on various grounds.

### APPELLANT'S CONTENTIONS

1. *Insufficient Evidence Establishing a Distributable Amount of Cocaine*

Appellant first contends that mere possession of five grams of cocaine is insufficient to support an inference of an intent to distribute within the meaning of 21 U.S.C. § 841(a)(1).[1] He cites *Turner v. United States*, 396 U.S. 398, 422–423, 90

---

* Honorable Charles B. Renfrew, United States District Judge for the Northern District of California, sitting by designation.

1. That section provides:

"(a) Except as authorized by this subchapter, it shall be unlawful for any person knowingly or intentionally—

"(1) to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance[.]"

S.Ct. 642, 24 L.Ed.2d 610 (1970), in which the Court held that the defendant's possession of 14 grams of cocaine was insufficient in and of itself as a predicate for concluding defendant was dispensing or distributing. However, where there is other evidence of a plan or intent to distribute, possession of as small a quantity as 4 or 5 grams is sufficient to establish an intent to distribute cocaine. *United States v. James*, 161 U.S. App.D.C. 88, 111–112, 494 F.2d 1007, 1030–1031 (D.C. Cir. 1974), *cert. denied*, 419 U.S. 1020, 95 S.Ct. 495, 42 L.Ed.2d 294 (1974). In the instant case, there is direct evidence that appellant engaged in the "distribution" of cocaine; although apparently no commercial scheme is involved, his sharing the cocaine with Zamora and Leon constitutes "distribution" for purposes of 21 U.S.C. § 841(a)(1). *United States v. Branch*, 483 F.2d 955, 956 (9 Cir. 1973). *See United States v. Wright*, 593 F.2d 105, 108 (9 Cir. 1979). In addition, there is some evidence in the record that a typical dose of cocaine may not exceed one fourth of a gram. Thus the five grams found in appellant's possession is a distributable amount.

### 2. Admission of Evidence of Threats Made by Appellant to Zamora

Appellant contends that the trial court erred in allowing the Government to elicit testimony from Zamora about alleged threats made by appellant for Zamora's cooperation with the prosecution because although the Government at least two weeks prior to trial had reason to believe Zamora had been threatened, appellant was not advised until the morning of trial of such evidence. Appellant asserts that the admission of the evidence was in violation of General Order No. 150 (referred to in the omnibus form filed in this action) which requires trial evidence to be disclosed within three working days before trial and prejudiced appellant's opportunity to prepare adequately his defense. Furthermore, appellant claims that the Government failed to disclose a prior inconsistent statement of Zamora made to the Assistant United States Attorney that he had not been threatened by appellant. According to appellant, this failure constitutes a violation of the prosecutor's duty under *Brady v. Maryland*, 373 U.S. 83, 87–88, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), to disclose timely all exculpatory evidence.[2]

■ As to its 11th-hour disclosure, the Government replies that it did not have substantial evidence of the threats until the night before trial and that its disclosure the following morning was as early as was practicable. However, the Government admits that in an interview with Zamora two weeks before trial, Zamora's attorney represented that threats had been made by appellant and Zamora himself made vague references to possible threats. Assuming the threat allegations should have been explored further[3] and disclosed in advance of trial, any error by the trial court in admitting the evidence did not constitute reversible error.

Defense counsel was informed the morning of trial and had two opportunities thereafter to question Zamora about the alleged threats, first on cross-examination during the prosecution's case and second on direct examination when Zamora was called as the opening witness for the defense. It should be noted that an hour long lunch recess was taken during the course of appellant's initial cross-examination of Zamora. We conclude that appellant had an adequate albeit brief opportunity to prepare

**2.** Appellant's additional contention that the evidence of threats should have been excluded as irrelevant is without merit. As the jury was properly instructed, while such evidence is not sufficient in itself to prove guilt, it is probative evidence tending to show appellant's consciousness of guilt. *See United States v. Honore*, 450 F.2d 31, 33–34 n. 1 (9 Cir. 1971), *cert. denied*, 404 U.S. 1048, 92 S.Ct. 728, 30 L.Ed.2d 740 (1972).

**3.** The prosecutor's failure to explore fully the threat issue may have amounted to negligence. It may be argued that such negligence warranted exclusion of the evidence even though the non-disclosure was not the result of bad faith on the Government's part. *Cf. Giglio v. United States*, 405 U.S. 150, 154, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972) (holding *Brady* applies whether the nondisclosure is the result of design or negligence of the prosecution).

his defense.[4] Moreover, defense counsel could have moved for a continuance had it been demonstrated that circumstances prevented the presentation of an effective defense. *See Gaspar v. Kassm*, 493 F.2d 964, 968–969 (3 Cir. 1974); *see generally*, 9 C. Wright and A. Miller, Federal Practice and Procedure, § 2352, pp. 141–144 (1971). No such motion was made.

This opportunity to prepare cross-examination distinguishes the instant case from *United States v. Roybal*, 566 F.2d 1109, 1110 (9 Cir. 1977), cited by appellant. In that case, the Government obtained evidence from an informant damaging to the defendant one month prior to trial but waited until the informant was on the stand before adducing it *without any prior warning* to the defendant. Moreover, the surprise testimony was the only direct evidence that defendant had trafficked in drugs, whereas, in the instant case, the threat allegations were peripheral and did not constitute the sole evidence of appellant's guilt.

In response to the *Brady* claim, the Government contends that although Zamora had stated two weeks before trial that no "threats" had been made, that statement was a mistake resulting from Zamora's limited proficiency in English. According to the Government, Zamora did not understand the meaning of "threat" and his prior statement was consistent with his testimony at trial.[5]

██ However, the prior disclaimer was ostensibly favorable and potentially useful to appellant and thus arguably falls within the scope of the Government's *Brady* obligation.[6] Even assuming a violation of *Brady*, however, we find no grounds for reversal. To make out a *Brady* claim requiring a new trial, appellant must demonstrate that the suppressed evidence was material. *Brady, supra*, 373 U.S. at 87, 83 S.Ct. 1194. The standard of materiality varies with the situation in which *Brady* applies. *United States v. Agurs*, 427 U.S. 97, 103–104, 112–113, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976). Where, as in the instant case, there has been no specific defense request for the evidence, the failure to disclose violates due process only "if the omitted evidence creates a reasonable doubt [about the defendant's guilt] that did not otherwise exist."[7]

4. Compare the minimal amount of time the courts have held adequate for defense counsel to prepare after receipt of Jencks Act, 18 U.S.C. § 3500, and *Brady* material. *See United States v. Anderson*, 574 F.2d 1347, 1352 (5 Cir. 1978); *United States v. Burke*, 506 F.2d 1165, 1168 (9 Cir. 1974), *cert. denied*, 421 U.S. 915, 95 S.Ct. 1576, 43 L.Ed.2d 781 (1975); *United States v. Amabile*, 395 F.2d 47, 52 (7 Cir. 1968), *vacated and remanded on other grounds*, 394 U.S. 310, 89 S.Ct. 1163, 22 L.Ed.2d 297 (1969); *Moore v. United States*, 394 F.2d 818, 819 (5 Cir. 1968), *cert. denied*, 393 U.S. 1030, 89 S.Ct. 641, 21 L.Ed.2d 573 (1969); *United States v. Rosenberg*, 157 F.Supp. 654, 661 (E.D.Pa.1958), *aff'd* 257 F.2d 760 (3 Cir.), *aff'd* 360 U.S. 367, 79 S.Ct. 1231, 3 L.Ed.2d 1304 (1959).

5. Zamora's testimony was as follows:
"Q. Would you explain the nature of that contact or contacts?
"A. Because once I went to his home, and he didn't threaten me.
"Q. He didn't what?
"A. Threaten me, but he told me, 'Forget about your fucking family, about your fucking baby.'
"Q. Did he ever say anything else relating to your decision to testify in court?
"A. Yes.

"Q. What did he say?
"A. He told me, 'You know what happens to snitchers.' And I told him back, 'What?'
"Q. Did he say anything?
"A. No.
"Q. Did he say anything else to you relating to your testimony?
"A. That there were people that if you put your finger on, something was going to happen." R.T. 144–145.

6. To require the Government to explain the apparent inconsistency after the defendant has adduced it at trial seems more consistent with *Brady* as opposed to allowing the Government unilaterally to decide that the inconsistency is only illusory and therefore need not be disclosed. It follows that while the "mere possibility that an item of undisclosed information might have helped the defense" does not require disclosure, *United States v. Agurs*, 427 U.S. 97, 109–110, 96 S.Ct. 2392, 2400, 49 L.Ed.2d 342 (1976), reasonable doubts should be resolved in favor of disclosure.

7. Compare the standard of materiality applied in the Fifth Circuit where the omitted evidence goes only to witness credibility and no specific discovery request is made, in which case a new trial is to be granted only if the defendant can

*Id.* at 112, 96 S.Ct. at 2402. We conclude that the inconsistent statement of Zamora does not create such a reasonable doubt. The prior statement would have had little impeachment value since it is evident that the prior disclaimer was merely the product of Zamora's language difficulty. Additionally, we note that the trial judge believed that Zamora's testimony about the threats was not important to the case since it was "more or less meaningless." While a trial judge's opinion, of course, cannot be dispositive on appeal, his judgment should be afforded substantial weight given his relative advantage in being able to render a first-hand appraisal of the record. *See Agurs, supra,* 427 U.S. at 113–114 and 117–119, 96 S.Ct. 2392 (Marshall, J., dissenting); *United States v. Curry,* 497 F.2d 99, 101 (5 Cir. 1974), *cert. denied,* 419 U.S. 1035, 95 S.Ct. 519, 42 L.Ed.2d 311.

### 3. The Government's Failure to State and Define the Advantage Zamora Was to Gain for His Testimony

Appellant argues that he was deprived of a fair trial because the Government failed to disclose the advantage Zamora was promised in return for his testimony. Specifically, appellant alleges that contrary to Zamora's testimony, the Government had secretly promised Zamora the opportunity to plea to a misdemeanor or dismissal prior to appellant's trial. It is well established that the prosecutor has a duty to disclose any promises of leniency made to a witness testifying at trial since any such agreement is relevant to his or her credibility. *Giglio*

*v. United States,* 405 U.S. 150, 154, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972); *Napue v. Illinois,* 360 U.S. 264, 269, 79 S.Ct. 1173, 3 L.Ed.2d 1217 (1959).

In cases in which the courts have ordered new trial on *Giglio* grounds, it was clear that an undisclosed agreement of leniency between the Government and the witness had been reached prior to the witness's testimony.[8] Although Zamora was indeed allowed to plea to a misdemeanor shortly after appellant's trial, the record is void of any evidence that an agreement allowing such a disposition had been reached at the time of the trial which was not disclosed to the jury. Zamora testified he understood he would be given an opportunity to plead to a lesser felony of smuggling goods but that no promises had been made for a plea less than a felony, or with respect to recommendations as to sentencing. He did state that even that agreement would be important to him because he understood that pleading to the lesser felony potentially could save him from deportation. At trial the court caused a letter from the prosecutor to Zamora's attorney, specifying the nature of the agreement to be read to the jury and stating that in return for his cooperation, "Mr. Zamora will be given an opportunity to plead guilty to at least" the goods-smuggling count, but that no promises regarding sentencing could or would be made. Zamora's attorney testified that the possibility of a misdemeanor disposition or dismissal was not foreclosed, but that the Government had made no promises beyond that stated in the letter.[9]

demonstrate that the undisclosed evidence "probably would have resulted in an acquittal." *Garrison v. Maggio,* 540 F.2d 1271, 1274 (5 Cir. 1976), *cert. denied,* 431 U.S. 940, 97 S.Ct. 2655, 53 L.Ed.2d 258 (1977).

**8.** *See Giglio, supra,* 405 U.S. at 152–153, 92 S.Ct. 763; *Campbell v. Reed,* 594 F.2d 4, 7 (4 Cir. 1979); *United States v. Butler,* 567 F.2d 885, 888 (9 Cir. 1978); *United States v. Harris,* 498 F.2d 1164, 1169 (3 Cir. 1974), *cert. denied,* 419 U.S. 1069, 95 S.Ct. 655, 42 L.Ed.2d 665 (1974); *United States v. Gerard,* 491 F.2d 1300, 1304 (9 Cir. 1974).

**9.** We are not unaware of the reality that the Government has ways of indicating to wit-

ness's counsel the likely benefits from cooperation without making bald promises (*see Butler, supra,* 567 F.2d at 888), and that conceivably Zamora's and his counsel's protestations that the Government made no "promises" while perhaps literally true might have been misleading. The prosecutor has a duty to apprise the court when he or she knows the witness is giving misleading testimony regarding such promises or negotiations. *United States v. Harris, supra,* 498 F.2d at 1169. However, there is no substantive evidence that this occurred in the instant case. Indeed, notwithstanding this fact, defense counsel was allowed to argue facts not in evidence in his summation before the jury when he implied that Zamora's

Even if a prior plea bargain has not been clearly established, where there is a substantive claim that an undisclosed agreement had been reached, *DeMarco v. United States*, 415 U.S. 449, 450, 94 S.Ct. 1185, 39 L.Ed.2d 501 (1974), requires remanding the case to the district court to conduct an evidentiary hearing in order to determine whether a bargain was reached prior to the witness's giving of his testimony. *United States v. Piet*, 498 F.2d 178, 182 (7 Cir. 1974), *cert. denied*, 419 U.S. 1069, 95 S.Ct. 655, 42 L.Ed.2d 664 (1974). However, the mere fact that the witness was subsequently allowed to plead to a lesser offense in and of itself is not sufficient to warrant a *DeMarco* hearing. *See United States v. Curry*, 497 F.2d 99, 101 (5 Cir. 1974), *cert. denied*, 419 U.S. 1035, 95 S.Ct. 519, 42 L.Ed.2d 311 (1974). In *DeMarco*, the existence of a plea agreement was clear and the remarks of the United States Attorney at the witness's sentencing hearing indicated that the agreement may have been reached prior to the witness's testimony. 415 U.S. at 449, 94 S.Ct. 1185. Appellant has not presented us with any substantial indicia of a prior agreement allowing for a misdemeanor disposition other than Zamora's actual plea three days after appellant's trial. The transcript of the Zamora proceedings provided by appellant does not reveal any evidence of a plea bargain which, if it existed, was required to have been disclosed on the record under Federal Rule of Criminal Procedure 11(e)(2).

### 4. Denial of Appellant's Motion to Reopen the Case

Appellant maintains that the trial court erred in refusing to reopen the case in order to allow appellant to introduce into evidence the summary of Zamora's pretrial interview for purposes of impeaching his testimony about the alleged threats. Generally, the reopening of a criminal case after the close of evidence lies within the sound discretion of the court. *See United States v. Sisack*, 527 F.2d 917, 919 (9 Cir. 1978); *Eason v. United States*, 281 F.2d 818, 822 (9 Cir. 1960); *see generally* 23 C.J.S. Criminal Law § 1055 (1961). In the instant case, appellant had an ample opportunity to cross-examine Zamora during trial upon learning of the threats and had advance possession of the summary. In view of an insufficient reason for not having introduced the summary at the proper time [10] together with the discharge of Zamora who returned to San Francisco immediately after both sides announced the close of their evidence, *see State v. Massey*, 358 Mo. 1108, 219 S.W.2d 326, 332 (1949),[11] we find the trial court did not abuse its discretion in denying appellant's motion.

Moreover, we note that the impeachment potential of the summary was at most marginal since it would have been based on an apparent omission or silence and not an affirmative inconsistent statement on Zamora's part. That omission could easily have been attributed to Zamora's language difficulty, mistrust of the prosecutor, or misunderstanding of its importance or relevance to the case.

### 5. Attorney-Client Privilege

Appellant argues that the trial court erred in sustaining Zamora's counsel's assertion of the attorney-client privilege when asked whether he had advised Zamora of the possibility of a misdemeanor disposition or dismissal in exchange for his cooperation with the Government. Essentially, appellant contends that Zamora waived the privilege when he responded negatively to the question, "You were never advised by anyone that you might get less than a felony?" Assuming the applicability of the attorney-client privilege to the facts in the

disposition would depend upon how things went at appellant's trial.

10. We note that defense counsel earlier had objected to the introduction into evidence of the summary sought by the Government.

11. The summary could not be fairly introduced without the Government's being able to question Zamora about the circumstances of the interview from which the summary was taken.

instant case, which appellant has not challenged,[12] the general denial by Zamora cannot be construed to be a voluntary waiver. Zamora made no affirmative reference to any communication with his attorney; the denial would be consistent with his not having any discussions with his attorney about a disposition less than a felony.

### 6. *Misconduct of the Prosecutor*

█ Appellant contends that the prosecutor's characterization during summation of defense counsel's cross-examination of Zamora as malicious constituted prejudicial misconduct. Upon examination of the record we conclude that the remarks were only a zealous presentation of the Government's case. We note that unlike most cases dealing with prosecutorial misconduct in argument before the jury, the remarks were directed at defense counsel and not appellant, and was not likely to be prejudicial.

### 7. *Failure to Give Appellant's Requested Jury Instruction*

█ Defense counsel requested an instruction as to an attorney's affirmative duty to advise his client of negotiations with the Government in an effort to mitigate counsel's assertion during trial of the attorney-client privilege. Appellant contends that the instruction was erroneously refused. The record fails to reveal defense counsel's objection to the instructions as finally given to the jury. Therefore, for appellant's assignment to be considered, it must fall within the plain error rule. *See United States v. Smith*, 451 F.2d 595, 596 (9 Cir. 1971); E. Cleary, McCormick on Evidence, § 53, p. 120 (2d ed. 1972). We find no "plain error" was committed below, especially in view of the fact that defense counsel was allowed to argue to the jury an attorney's duty to inform his client.

### CONCLUSION

Appellant's contentions of error are either without merit or were not substantial enough to warrant reversal of the conviction. Judgment affirmed.

█

---

12. Since appellant does not argue the point, we need not decide the issue here. We note, however, that whether the privilege applies under these circumstances might present a substantial question. What is involved is a possible offer from a third party conveyed through the attorney to his client. Although the states are divided as to whether communications from an attorney to a client as opposed to the reverse come under privilege, the federal courts have generally held that communications in both directions are covered. *See Schwimmer v. United States*, 232 F.2d 855, 863 (8 Cir. 1956), *cert. denied*, 352 U.S. 833, 77 S.Ct. 48, 1 L.Ed.2d 52 (1956); *Hearn v. Rhay*, 68 F.R.D. 574, 579 (E.D. Wash.1975); *but see United States v. Goldfarb*, 328 F.2d 280, 282 (6 Cir. 1964). But it has been held that as to an attorney's communication to the client, the privilege extends only to those based on confidential information provided by the client, *Mead Data Central, Inc. v. United States Dept. of Air Force*, 184 U.S.App.D.C. 350, 362, 566 F.2d 242, 254 (D.C. Cir. 1977), or containing legal advice or opinions of the attorney. *Matter of Fischel*, 557 F.2d 209, 211–212 (9 Cir. 1977); *United States v. United Shoe Machinery Corp.*, 89 F.Supp. 357, 359 (D.Mass. 1950); *see Fisher v. United States*, 425 U.S. 391, 403, 96 S.Ct. 1569, 48 L.Ed.2d 39 (1976); *SCM Corp. v. Xerox Corp.*, 70 F.R.D. 508, 521–522 (D.Conn.1976), *app. dismissed*, 534 F.2d 1031 (2 Cir. 1976); *8 in 1 Pet Products, Inc. v. Swift and Co.*, 218 F.Supp. 253, 253 (S.D.N.Y. 1963); *see also* Cal.Evid.Code § 952 (West Supp.1978). The limitation is consistent with the modern justification of the privilege of encouraging full disclosure by the client to the attorney for the furtherance of the administration of justice. *See* E. Cleary, McCormick on Evidence, § 89, pp. 182–183 (2d ed. 1972). Mere conveyance of an offer from the Government without any discussion of advice arguably does not fall within the scope of the privilege. More importantly, in balancing the competing interests, the due process right of a criminal defendant to fully explore and expose any leniency agreements and negotiations between the Government and its witness established in *Giglio, Napue*, and their progeny weighs heavily against the interests underlying the privilege. *See Robinson v. State*, 550 S.W.2d 54, 59 (Tex. Cr.App.1977); *Mays v. State*, 594 P.2d 777 (Okl.Cr.App.1979).