967 F.2d 595
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America Plaintiff-Appellee,
v.
John PRIEST, Defendant-Appellant.
 No. 90-10636.
 United States Court of Appeals, Ninth Circuit.
 Argued Jan. 13, 1992.
Submission Deferred Jan. 13, 1992
Deferral Vacated Jan. 17, 1992.
Decided June 16, 1992.
As Amended July 22, 1992.
 
 Before TANG, PREGERSON and BOOCHEVER, Circuit Judges.
 
 
 1
 John H. Priest appeals his jury conviction for making false statements to federally insured banks in connection with loan applications in violation of 18 U.S.C. §§ 2 and 1014, and scheming to defraud a bank in violation of 18 U.S.C. § 1344. We have jurisdiction pursuant to 28 U.S.C. § 1291. We affirm.
 
 DISCUSSION
 
 2
 On six occasions between 1984 and 1986, Priest submitted false copies of income tax returns in support of applications for loans and extensions of loans at three federally insured banks. The returns submitted to the banks reflected incomes that were significantly higher than the returns filed with the Internal Revenue Service ("IRS"). On appeal, Priest argues (1) that the evidence was insufficient to convict him, (2) that the district judge erred in denying his motion to suppress his tax returns, and (3) that he was prevented from testifying on his own behalf by his attorney and by the district judge.
 
 I.
 
 3
 Priest challenges the sufficiency of the evidence on two grounds. First, he argues that the government failed to prove that the banks were federally insured at the time of the offenses. This argument is without merit. The government presented testimony from bank officials of each bank that the banks were federally insured. This is sufficient. "The rule, as stated in this circuit and elsewhere, is that the uncontradicted testimony of a ranking official of the institution is sufficient to establish that the institution is federall insured." United States v. Phillips, 606 F.2d 884, 887 (9th Cir.1979), cert. denied, 444 U.S. 1024 (1980).
 
 
 4
 Priest also argues that although the tax returns submitted to the banks indicated a substantially higher income than the returns submitted to the IRS, the government failed to prove that the returns submitted to the banks reflected an inaccurate picture of his financial status at that time. This claim betrays a flawed understanding of 18 U.S.C. §§ 1014 and 1344. The "false statement or report" and the "false or fraudulent pretenses or representations" exist because Priest asserted that the documents he submitted to the banks were true and accurate copies of his IRS tax returns, not--as Priest claims here--because the returns did not accurately reflect his actual financial status. Thus, there is no error in the government's failure to adduce evidence as to Priest's financial condition.
 
 II.
 
 5
 Next, Priest asserts that the trial court erred in not suppressing his tax returns because the returns were not procured in accord with the procedures established by 26 U.S.C. § 6103(i)(1)(B). We reject this argument. Suppression is not an appropriate remedy for violation of 26 U.S.C. § 6103. "No court has held that a section 6103 violation warrants dismissal or suppression." United States v. Michaelian, 803 F.2d 1042, 1049 (9th Cir.1986); United States v. Claiborne, 765 F.2d 784, 793 (9th Cir.1985), cert. denied, 475 U.S. 1120 (1986). Accordingly, the trial court did not abuse its discretion by denying Priest's motion to suppress.
 
 III.
 
 6
 Priest's final contention is that his fifth amendment right to testify on his own behalf was violated by the conduct of his own attorney and by that of the district judge. He argues that the district judge erred by denying his motion to reopen the case to allow him to testify.
 
 
 7
 Although a criminal defendant's right to testify is a personal and fundamental right, guaranteed by the Fifth, Sixth and Fourteenth Amendments, Rock v. Arkansas, 483 U.S. 44, 51-56 (1987), the right is also subject to reasonable regulation by the state, see e.g., United States v. Hearst, 563 F.2d 1331, 1340 (9th Cir. 1977) (holding that the right to testify carries with it the obligation to submit to cross-examination), cert. denied, 435 U.S. 1000 (1987). The issue before us is whether the district court abused its discretion in denying Priest's motion. See United States v. Kelm, 827 F.2d 1319, 1323 (9th Cir. 1987). Based upon our review of this case, we conclude that the district court did not abuse its discretion in denying Priest's motion.
 
 
 8
 In determining whether to grant a motion to reopen, the district court considers the sufficiency of the reasons for the defendant's failure to offer evidence at the proper time, id., and the potential value of the evidence, United States v. Ramirez, 608 F.2d 1261, 1267 (9th Cir. 1979).
 
 
 9
 First, Priest contends that because his request came before final argument and submission to the jury, allowing him to testify would not have prejudiced the government or the court. Priest relies on the fundamental nature of his right to testify to prevail over the fact that his request was untimely and the fact the he presents no justifiable reason for failing to express his desire to testify in a timely manner.
 
 
 10
 The record is clear that Priest had the opportunity to inform the district court in a timely manner of his desire to testify. Before the defense rested, Priest attended two in-chambers conferences where an instruction on his decision not to testify was discussed and finalized. Before resting, counsel inforemed Priest how to exercise his right to testify, but advised him not to take the stand. Priest did not express his desire to testify until after his defense counsel rested and the government completed calling its rebuttal witnesses. Given this procedural history, the record fairly supports the district court's judgment that Priest's request was untimely. Priest knew how to exercise timely his right to testify and offers no excuse for his failure to do so.
 
 
 11
 Second, Priest contends that his testimony would have bolstered testimony by his doctor that he was taking certain medication at the time of the offense and that, because of this medication, he lacked the requisite intent to commit the crime.
 
 
 12
 Although Priest argues that his testimony was pivotal with respect to lack of requisite intent to commit the crime, this testimony would have been cumulative. Priest's doctor testified at trial about the medications Priest was taking and the side effects experienced from those medications.
 
 
 13
 Additionally, during the defense's presentation of its case, the district court was aware that Priest and his attorney continued to evaluate whether Priest should take the stand in his own defense. The inference to be drawn by the court from defense counsel's resting without Priest testifying was that it was to Priest's benefit that he not testify and make himself available for cross-examination.
 
 
 14
 Finally, defendant's conduct must be noted as part of the overall context in which the district court made its decision. When informed that he would not be allowed personally to make an argument to the jury, Priest requested the court to "put me in handcuffs and take me out of the courtroom if I'm not going to be allowed to testify or make a statement." The court refused and Priest loudly commented "why can't I testify." It is also noted that Priest carried out his own request and rushed out of the courtroom just before the government's final rebuttal argument. Although not a substantive reason relied upon by the district court in denying Priest's motion, such conduct suggests that Priest was maneuvering to obtain a reversal of his conviction.
 
 
 15
 For these reasons we believe that the district court did not abuse its discretion in denying Priest's motion to reopen the case.
 
 
 16
 AFFIRMED.
 
 BOOCHEVER, Chief Judge, dissenting in part:
 
 17
 I respectfully dissent because I believe that Priest's Fifth Amendment right to testify on his own behalf was violated.
 
 
 18
 Priest's trial began on Monday, September 24, 1990. On Tuesday, September 25, the government rested its case, and the defense began its presentation by calling two witnesses, Priest's doctor, and a former client of Priest's. On Wednesday, September 26, Priest's attorney rested the defense case without calling any more witnesses, and requested a continuance because he was ill. The judge continued the trial until Monday, October 1.
 
 
 19
 When the trial resumed on October 1, Priest presented the court with a pro se motion for a mistrial on the grounds of ineffective assistance of counsel, and when it was denied, demanded to testify in his own behalf. The district judge asked Priest's attorney if the decision not to put Priest on the stand had been a joint one. The attorney declined to answer. The judge denied Priest's request, in effect refusing to reopen the evidence to permit him to take the stand. The jury then heard closing arguments. After his attorney's closing argument Priest renewed his demand to testify, and again the court rejected it as untimely. The case was then submitted to the jury, which returned guilty verdicts on all counts.
 
 
 20
 The right to testify on one's own behalf is a fundamental and personal right guaranteed by the Fifth and Sixth Amendments to the United States Constitution. United States v. Martinez, 883 F.2d 750, 756 (9th Cir.1989) vacated on other grounds, 928 F.2d 1470 (9th Cir.1991), cert. denied, 111 S.Ct. 2886 (1991). It is a right "essential to due process of law in a fair adversary process." Rock v. Arkansas, 483 U.S. 44, 51 (1987) ( quoting Faretta v. California, 422 U.S. 806, 819 n. 15 (1975)). A criminal defendant may waive the right to testify by his or her own conduct, including silence in the face of counsel's decision not to call the defendant to testify. United States v. Edwards, 897 F.2d 445, 446 (9th Cir.), cert. denied, 111 S.Ct. 560 (1990).
 
 
 21
 Here, Priest had expressed his desire to testify to his attorney, but was advised against it. Yet it is apparent that Priest's attorney was sick during much of the period involved in the decision whether Priest would testify, and was too ill to continue with the trial when he rested the defense case. Moreover, Priest demanded to testify before closing arguments, and again before the case went to the jury. As a reviewing court, we must "indulge every reasonable presumption against waiver of fundamental constitutional rights." Johnson v. Zerbst, 304 U.S. 458, 464 (1938). Given these facts, I conclude that Priest did not waive the right to testify in his own behalf.
 
 
 22
 Although Priest did not waive his constitutional right to testify, I agree with the majority that this right is "not so absolute that it may not be subjected by the state to reasonable restrictions." Martinez, 883 F.2d at 754. The efficient and orderly conduct of a criminal trial, for example, represents a "legitimate interest[ ] in the criminal trial process" which may override a defendant's untimely request to testify in his or her own behalf. See Rock, 483 U.S. at 55 ( quoting Chambers v. Mississippi, 410 U.S. 284, 296 (1973)). Here, Priest invoked his right to testify in his own behalf after the close of evidence but before submission to the jury. Our inquiry therefore is properly focused on the district court's refusal to reopen the evidence at this point to allow him to take the stand. See generally United States v. Walker, 772 F.2d 1172 (5th Cir.1985) (addressing court's failure to reopen evidence where defendant asked to testify after resting case but before closing arguments).
 
 
 23
 We review a district court's decision not to reopen the evidence for an abuse of discretion. United States v. Kelm, 827 F.2d 1319, 1323 (9th Cir.1987). In making this decision, the court must consider the sufficiency of the reasons for the accused's failure to offer evidence at the proper time, id., and the potential value of the evidence. United States v. Ramirez, 608 F.2d 1261, 1267 (9th Cir.1979). In Walker, a case similar to this, the Fifth Circuit evaluated the court's refusal to reopen the evidence to allow a defendant to testify in his own behalf based on these two factors, and on two additional factors as well: the timeliness of the request to reopen, and the effect of granting the request. See Walker, 772 F.2d at 1177 (citing United States v. Thetford, 676 F.2d 170, 182 (5th Cir.1982), cert. denied, 459 U.S. 1148 (1983); United States v. Larson, 596 F.2d 759, 778 (8th Cir.1979)). I address each of these four factors in turn.
 
 
 24
 The illness of Priest's attorney, and his unexpected resting of the defense case, furnishes a sufficient explanation for Priest's failure to make his wish to testify known to the court before the close of evidence. Priest explained to the court that his attorney's illness had prevented Priest's participation and input in the preparation of his case. He also told the judge that immediately before his attorney rested his case, Priest was still under the impression that he would be able to take the stand. His attorney's statement immediately after resting the case that he was "spacing in and out" and too ill to continue with the trial is consistent with the existence of a misunderstanding between Priest and his attorney about Priest testifying.
 
 
 25
 The court did not give Priest the opportunity to make a formal proffer concerning the value of his testimony. However, an accused's "testimony in his own defense is of such inherent significance that the district court, as a matter of fairness, should ... permit[ ] him to testify." Walker, 772 F.2d at 1179. Priest's testimony was especially significant inasmuch as only two other witnesses testified in his defense. The defense theory was essentially that Priest lacked the requisite intent. Priest's testimony no doubt would have borne on this issue. His doctor had testified about Priest's medical problems and the medications he was taking, which could affect his mental processes. Priest's testimony could have revealed from firsthand experience that the doctor's opinion was correct as to these matters, which tended to negate intent. In addition, Priest's presence on the stand would have "afforded him the opportunity to have the jury observe his demeanor and judge his veracity firsthand." Walker, 772 F.2d at 1179.
 
 
 26
 As a motion to reopen the evidence, Priest's request to testify was not significantly untimely. Although Priest did not indicate his wish to testify immediately after his attorney rested his case, he made his wish known at the beginning of the next day of trial. Thus, the delay involved in requesting that his case be reopened was minimal. See id. at 1177; see also United States v. Larson, 596 F.2d 759, 778-79 (8th Cir.1979) (finding abuse of discretion in court's refusal to allow additional defense witness on Monday morning where defense had rested Friday afternoon). The effect of allowing Priest to testify would not have been anything more than a minor disruption in the orderly flow of testimony. Closing arguments had not been heard nor had the jury been charged. See Walker, 772 F.2d at 1179-80. Moreover, there is no indication in the record that the government's case would have been prejudiced by reopening the evidence. See id.
 
 
 27
 Under an abuse of discretion standard, reversal is warranted only if the reviewing court has a "firm conviction" that the district court "committed a clear error of judgment in the conclusion it reached upon a weighing of the relevant factors." Parker v. Joe Lujan Enterprises, Inc., 848 F.2d 118, 121 (9th Cir.1988). The record is devoid of any indication that the district court considered or weighed any of these factors in refusing to allow Priest to testify. In light of the fundamental nature of the constitutional right to testify in one's own behalf, the plausible reasons for not making the request earlier, the timing of the request before closing arguments and jury instruction, and the absence of evidence indicating prejudice to the prosecution, I conclude that the district court abused its discretion in not reopening the evidence to allow Priest to take the stand. Accordingly, I would reverse the judgment and remand for a new trial.
 
 
 28
 ---------------
 
 
 
 * This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3.