Charles HIGGINS *v.* STATE of Arkansas

CA CR 05-779                                      230 S.W.3d 316

Court of Appeals of Arkansas
Opinion delivered March 1, 2006

[Rehearing denied April 5, 2006.*]

*Montgomery, Adams & Wyatt, PLC*, by: *Dale E. Adams*, for appellant.

*Mike Beebe*, Att'y Gen., by: *Brad Newman*, Ass't Att'y Gen., for appellee.

ROBERT J. GLADWIN, Judge. Appellant Charles Higgins was convicted by a Pulaski County jury of aggravated robbery and theft of property, for which he was sentenced to 120 months in the Arkansas Department of Correction. On appeal, he argues that he was denied due process by the State's failure to disclose a tacit and implicit agreement to give his co-defendant favorable terms in a plea agreement as well as by the State's failure to correct false testimony. We affirm.

---

* HART, J., would grant rehearing.

Early in the morning on April 25, 2004, Frederick Eberhart was working as a clerk at a Shell Superstop in Little Rock, Arkansas. Appellant entered and exited the store several times in a short period of time, at least one time purchasing a soft drink while there. The final time he entered the store, he was accompanied by a white male, Steven Hicks, who pulled a gun, pointed it at Eberhart's head, and demanded money. Eberhart gave Hicks the money from the cash drawer, and Hicks and appellant ran out of the store together toward the interstate bridge.

Subsequent to the robbery, on April 28, 2004, Eberhart identified appellant from a photographic lineup of six photographs shown to him by law enforcement officers and stated that, during the actual robbery, appellant merely held the door open so that it would not automatically lock upon closing. One of the detectives involved in the identification process told Eberhart to take his time and close his eyes, while another detective observed that Eberhart did not make an immediate identification, taking approximately five to ten minutes before identifying appellant.

Appellant was charged, along with Hicks, with aggravated robbery and theft of property. At his jury trial held on April 12, 2005, Eberhart identified appellant, initially stating that it took him only three to five minutes to identify him in the photo lineup but admitting on cross-examination that it had taken almost twenty minutes. The two detectives also testified as to the identification process.

Co-defendant Hicks was called by the State and testified that he had not been to the Shell Superstop with appellant, either on April 25, 2004, or at any other time. Later, he changed his story, accusing appellant and another individual, Montonio Roberts, of forcing him at gunpoint to rob the store. Hicks was specifically asked whether he had entered a plea agreement or had a deal with the State in exchange for his testimony against appellant, to which he responded that he did not, and he further stated that his trial was set for May 5, 2005. Subsequently, appellant was convicted and sentenced to the minimum term of imprisonment, ten years.

On April 15, 2005, a hearing took place during which the State reduced the charges against Hicks from aggravated robbery to simple robbery. He attempted to enter a guilty plea, but the trial court refused to accept it based upon his testimony at appellant's trial that he was forced at gunpoint to commit the robbery. Appellant filed a motion for a new trial on May 6, 2005, alleging that the State did not reveal that it had a tacit or implicit agreement

with Hicks for favorable treatment in exchange for his testimony against appellant. The State responded on May 23, 2005, stating that a plea offer was extended to Hicks on April 14, 2005, and that no previous agreement had existed; and further, that the State did not fail to "correct witness testimony known to be false."

At the hearing on appellant's motion for a new trial, the only witness was Hicks's attorney, Sharon Kiel. She testified that she was present at the sole meeting between her client and the prosecutors. She explained that prior to that meeting the prosecutors had asked Hicks if he would testify for the State, and they specifically told him that they could not guarantee, promise, or discuss "any outcome" in exchange for his testimony. Kiel testified that there was no anticipation of any reward or benefit in exchange for Hicks's testimony, and she explained to her client that there was "nothing on the table." Kiel admitted that she thought it would benefit Hicks to testify for the State and that she hoped the State would help him if he did so. She explained that she expressed that "hope" to Hicks but stated that no deal had been made. She testified that if Hicks had been asked if he hoped to benefit from testifying, he could have answered questions along that line, but that is not what was asked. Finally, she expressed that she called the prosecutor's office the day after appellant's trial, and it was at that time that the State made the plea offer to Hicks to reduce the aggravated-robbery charge to simple robbery and a recommendation of twenty years' imprisonment in return for Hicks's guilty plea. The trial court summarily denied appellant's motion for a new trial in an order entered on May 25, 2005, and appellant filed his notice of appeal on June 21, 2005.

The decision on whether to grant or deny a motion for new trial lies within the sound discretion of the circuit court. *Holloway v. State*, 363 Ark. 254, 213 S.W.3d 633 (2005). We will reverse a circuit court's order granting or denying a motion for new trial only if there is a manifest abuse of discretion. *Id.* A circuit court's factual determination on a motion for new trial will not be reversed unless clearly erroneous. *Id.* This court has repeatedly held that the issue of witness credibility is for the trial judge to weigh and assess. *Id.* Accordingly, this court will defer to the superior position of the circuit court to evaluate the credibility of witnesses. *Id.*

In his motion for a new trial, appellant argued that the State withheld exculpatory evidence in contravention of *Brady v. Maryland*, 373 U.S. 83 (1963), and its progeny, and also that the State introduced what it knew was incorrect or false testimony in contravention of cases

such as *Napue v. Illinois*, 360 U.S. 264 (1959). He first addresses the fact that the State did not believe that Hicks was forced at gunpoint to rob the store, and accordingly, the prosecutor should not have allowed Hicks to testify as to such. He contends that the State had a duty to correct the false testimony pursuant to *Napue, supra*, irrespective of how the testimony arose or who introduced it. He claims that this was a violation of due process but recognizes that it warrants relief only if the false testimony could in any reasonable likelihood have affected the judgment of the jury. *See id.* at 271. He points out that this is a lesser standard than required in *Brady, supra*, which requires a reasonable probability of a different result if the false testimony had been corrected.

Appellant argues that Hicks's testimony undoubtedly contributed to the guilty verdict against him, despite Eberhart's identification of appellant as Hicks's accomplice. He asserts that Eberhart was not a credible witness and that his testimony regarding the identification was "shaky." Additionally, Hicks contradicted himself during his testimony by alleging that appellant forced him at gunpoint to rob the store. Appellant maintains that this false testimony from Hicks, which was specifically allowed by the State, along with the State's failure to disclose the tacit agreement with Hicks regarding his testimony against appellant, was material and warrants a reversal of his conviction.

As to appellant's argument regarding Hicks's tacit agreement in exchange for testimony against him, it is true that any agreement of leniency for testimony must be disclosed to the defense prior to trial; otherwise, a defendant's due-process rights are violated. *See Giglio v. United States*, 405 U.S. 150 (1972); *Haire v. State*, 340 Ark. 11, 8 S.W.3d 468 (2000). In *Giglio*, the government failed to disclose an alleged promise to its key witness that he would not be prosecuted if he testified for the government. The key witness was Giglio's alleged co-conspirator and the only witness linking Giglio with the crime. In holding that Giglio was entitled to a new trial, the Supreme Court wrote:

> When the "reliability of a given witness may well be determinative of guilt or innocence," nondisclosure of evidence affecting credibility falls within [the *Brady* rule]. . . . We do not, however, automatically require a new trial whenever "a combing of the prosecutors' files after the trial has disclosed evidence possibly useful to the defense but not likely to have changed the verdict. . . ." A finding of materiality of the evidence is required under *Brady*. . . . A new trial is required if "the false testimony could . . . in any reasonable likelihood have affected the judgment of the jury. . . ."

*Giglio,* 405 U.S. at 154 (citations omitted). The Supreme Court went on to note that the government's case "depended almost entirely on [the witness's] testimony; *without it there could have been no indictment and no evidence to carry the case to the jury." Id.* (emphasis added). The State asserts that such is not the situation in this case. The State's case was not entirely dependent on Hicks's testimony, as the review of the record, and specifically the testimony from Eberhart described above, plainly reveals.

Appellant also cites *Silva v. Brown,* 416 F.3d 980 (9th Cir. 2005), regarding the non-disclosure of the mental competence of a co-defendant to the defense team prior to trial. The co-defendant and prosecutors had agreed that the co-defendant would not undergo a psychiatric examination before trial, and further agreed that charges against him would be reduced in exchange for his testimony. The suppression of that agreement was held to be in violation of *Brady,* and appellant claims the suppression of the tacit agreement in his case is the same situation. The co-defendant in *Silva* agreed to forego his motion for a psychiatric examination before he testified against Silva, just as Hicks agreed to forego his formal plea agreement before testifying against appellant. This case is distinguishable because in *Silva,* there was an express agreement that had previously been reached between the testifying co-defendant and the prosecutors that is not present here.

More closely on point is *Haire, supra,* where there was no proof that such an agreement was made by the prosecutors. The witness in question testified that there was no agreement, and nothing was offered by Haire to counter that testimony. Our supreme court held that:

> The mere fact, standing alone, that the charges were dropped [against Polk] after the trial does not establish a *Giglio* violation. *See, e.g., United States v. Ramirez,* 608 F.2d 1261 (9th Cir. 1979) (fact that witness for government pled guilty to lesser offense three days after trial not enough to establish a prior agreement). Furthermore, as the trial court noted, the fact that Polk had charges pending against her at the time of her testimony was explored by both the State and the defense in questions before the jury. Haire has failed to exhibit reversible error on this point.

*Haire,* 340 Ark. at 17, 8 S.W.3d at 472.

■ There are no cases that have held that a mere "hope" of leniency is equivalent to an actual agreement or express promise of leniency. As the State pointed out, if that was the standard, there

would be no reason for evidence of such an agreement to be produced at trial. The trial courts would simply instruct juries, as a matter of law, that leniency would be granted in exchange for such testimony. Hicks's testimony did not violate the mandates of *Giglio* and *Brady*, as no deal had been offered by the State at the time he testified. Appellant's counsel failed to inquire as to whether Hicks expected, thought, or even hoped for leniency in exchange for his testimony. If counsel had, Hicks could have answered differently. As asked, he could not explain an agreement that had not yet been reached, or even discussed. As in *Haire, supra*, the fact that Hicks's attorney subsequently called the prosecutor's office and a plea agreement was reached has no bearing on the credibility of the previous testimony at the time of appellant's trial.

Affirmed.

GRIFFEN and NEAL, JJ., agree.